Montgomery County, Maryland v. Anthony G. Cochran and Andrew Bowen, No. 69, September Term, 2019

**WORKERS' COMPENSATION ACT – OCCUPATIONAL DEAFNESS – MD. CODE ANN., LAB. & EMPL. (1991, 2016 REPL. VOL.) § 9-650(b)(3) — CALCULATION OF DEDUCTION FOR "EACH YEAR OF THE COVERED EMPLOYEE'S AGE OVER 50 AT THE TIME OF THE LAST EXPOSURE TO INDUSTRIAL NOISE" – COMPENSABLE DISABLEMENT – TINNITUS –** Court of Appeals held that Workers' Compensation Commission did not err in calculating deduction of decibels from firefighters' total average hearing losses under Md. Code. Ann., Lab. & Empl. (1991, 2016 Repl. Vol.) ("LE") § 9-650(b)(3) by counting number of years between each firefighter's 50th birthday and dates that they each retired from employment with Montgomery County, Maryland.  Court of Appeals concluded that plain and ordinary meaning of term "industrial noise" as used in LE § 9-650(b)(3) is occupational noise or noise encountered in workplace in employment of employer.  Thus, phrase "time of [] last exposure to industrial noise" means date that employee is last exposed to occupational noise, *i.e.*, date of employee's retirement, and not date of hearing test measuring hearing loss.

Court of Appeals also held that, under circumstances of one firefighter's case, any issue as to whether firefighter sustained compensable disablement due to tinnitus, *i.e.*, whether tinnitus is compensable as part of occupational deafness claim or as occupational disease upon establishment of disablement, was not before Court of Special Appeals.  Court of Appeals thus concluded that Court of Special Appeals erred in considering matter and in reversing Workers' Compensation Commission's award of permanent partial disability benefits to firefighter for tinnitus on that ground.

Circuit Court for Montgomery County
Case Nos. 423960-V and 442304-V

Argued: September 14, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 69

September Term, 2019
_____

MONTGOMERY COUNTY, MARYLAND

v.

ANTHONY G. COCHRAN AND ANDREW
BOWEN
_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.
_____

Opinion by Watts, J.
McDonald and Getty, JJ., concur.
_____

Filed: October 26, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Loss of hearing is inherent in many jobs. As one example, firefighters are repeatedly exposed to loud noise in the form of sirens, air horns, engines, alarms, and the like while working, which may lead to hearing loss.[1] The Maryland Workers' Compensation Act, Md. Code Ann., Lab. & Empl. (1991, 2016 Repl. Vol.) ("LE") §§ 9-101 to 9-1201, expressly recognizes that loss of hearing may occur on the job due to industrial noise and makes such hearing loss compensable under certain circumstances. The Workers' Compensation Act states that an employer shall provide compensation to a covered employee for loss of hearing due to industrial noise in specified frequencies, also known as occupational deafness, or for a disability resulting from an occupational disease. See LE §§ 9-505(a), 9-502(c)(1). Specifically, LE § 9-505(a) states that, "[e]xcept as otherwise provided, an employer shall provide compensation in accordance with this title to a covered employee for loss of hearing by the covered employee due to industrial noise in" four specified frequencies. LE § 9-650 sets forth the formula for calculating total average hearing loss and LE § 9-650(b)(3) provides for a deduction of the average decibel loss, stating:

> To allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age, there shall be deducted from the total average decibel loss determined under paragraphs (1) and (2) of this subsection one-half of a decibel for each year of the covered employee's age over 50 at the time of the last exposure to industrial noise.

Here, Anthony G. Cochran, Respondent, and Andrew Bowen, Respondent/Cross-Petitioner, were firefighters for Montgomery County, Maryland ("the County"),

---

[1] See, e.g., Randy L. Tubbs, *Noise and Hearing Loss in Firefighting*, 8 No. 3 Occupational Med. Dig. 9 (Mar. 1996).

Petitioner/Cross-Respondent, for over thirty years. Both Cochran and Bowen developed hearing loss from exposure to loud noises they repeatedly encountered on the job as firefighters. Bowen also developed tinnitus, or ringing in the ears. After retiring, Cochran and Bowen each underwent audiograms, which showed hearing loss in both ears, and each filed a claim under LE § 9-505 with the Workers' Compensation Commission ("the Commission") seeking compensation for hearing loss and, in Bowen's case, compensation for tinnitus, too.

The Commission awarded compensation to both Cochran and Bowen and calculated the deduction under LE § 9-650(b)(3) by counting the number of years between each man's 50th birthday and the date of his retirement. The Commission found that Cochran and Bowen had sustained hearing loss arising in and out of the course of their employment as firefighters, and that Bowen had also sustained tinnitus arising in and out of the course of his employment as a firefighter. As to Bowen, later, the Commission awarded Bowen compensation for a permanent partial disability for bilateral hearing loss and an additional permanent partial disability of 2% industrial loss of use of the body as a result of tinnitus.

The County filed separate petitions for judicial review in the Circuit Court for Montgomery County, which affirmed the Commission's decisions. The County appealed each case to the Court of Special Appeals, which consolidated the cases. In a reported opinion, addressing how the deduction set forth in LE § 9-650(b)(3) should be calculated, the Court of Special Appeals held that the Commission correctly calculated "the deduction by counting the number of years between each firefighter's 50th birthday and the dates they retired from service." Montgomery Cty. v. Cochran, 243 Md. App. 102, 126, 219

A.3d 122, 136-37 (2019). The Court of Special Appeals held, though, that the Commission erred in awarding permanent partial disability benefits to Bowen for tinnitus. See id. at 129, 219 A.3d at 138. Although not a question raised by the County, the Court of Special Appeals determined that compensation for tinnitus must be determined under LE § 9-502 as an ordinary occupational disease, not under LE § 9-505 as part of occupational deafness. See id. at 129, 219 A.3d at 138-39. The Court of Special Appeals concluded that, because Bowen did not establish disablement under LE § 9-502, the Commission erred in awarding him benefits for tinnitus. See id. at 129-30, 219 A.3d at 139. The Court of Special Appeals affirmed the circuit court's judgment in Cochran's case and affirmed in part and reversed in part the circuit court's judgment in Bowen's case. See id. at 107, 133, 219 A.3d at 125, 141. We granted *certiorari* to consider the proper date for the calculation of the deduction under LE § 9-650(b)(3) and whether the Court of Special Appeals erred in reversing the Commission's award of permanent partial disability to Bowen for tinnitus. See Montgomery Cty. v. Cochran, 467 Md. 263, 224 A.3d 601 (2020).

We must decide whether the Commission erred in calculating the deduction set forth in LE § 9-650(b)(3) by counting the number of years between each firefighter's 50th birthday and the dates on which each firefighter retired. Specifically, we must decide whether the phrase "last exposure to industrial noise" as used in LE § 9-650(b)(3) means the date that an employee is last exposed to occupational noise at work, *i.e.*, the date of retirement, or whether it means the date of a hearing test measuring hearing loss. We must also determine whether the issue of whether Bowen was required to bring a claim for tinnitus under LE § 9-502, as opposed to under LE § 9-505 as part of his occupational

- 3 -

deafness claim, was before the Court of Special Appeals, and whether the Court of Special Appeals erred in reversing the Commission's award of permanent partial disability benefits to Bowen for tinnitus.

We hold that the Commission did not err in calculating the deduction of decibels from Cochran's and Bowen's total average hearing losses under LE § 9-650(b)(3) by counting the number of years between each firefighter's 50th birthday and the dates that they each retired from employment with the County. We conclude that the plain and ordinary meaning of the term "industrial noise" as used in LE § 9-650(b)(3) is occupational noise or noise encountered in the workplace in the employment of the employer. Thus, the phrase "time of the last exposure to industrial noise" means the date that an employee is last exposed to occupational noise, *i.e.*, the date of the employee's retirement, and not the date of a hearing test measuring hearing loss. We also hold that any issue as to whether Bowen sustained a compensable disablement due to tinnitus, *i.e.*, whether tinnitus is compensable under LE § 9-502 as an occupational disease upon establishment of disablement and not under LE § 9-505 as part of an occupational deafness claim, was not before the Court of Special Appeals. The Court of Special Appeals erred in considering the matter and in reversing the Commission's award of permanent partial disability benefits to Bowen for tinnitus. Accordingly, we affirm in part and reverse in part the judgment of the Court of Special Appeals.

## BACKGROUND

### Anthony G. Cochran

Cochran was employed as a firefighter by the County for approximately thirty-four

years. In November 2013, when he was approximately 57 years old, Cochran retired. Nearly two years later, on September 23, 2015, when he was 58 years old, Cochran underwent an audiogram, which showed hearing loss in both ears.

On March 21, 2016, Cochran filed a claim with the Commission seeking compensation for binaural hearing loss. In the claim, Cochran asserted that he developed hearing loss due to exposure to noise during the many years that he served as a firefighter. Cochran identified his "Date of accident/occupational disease disablement" as "09/23/2015[.]" Two months later, on May 23, 2016, Cochran underwent another audiogram, which also showed some hearing loss in each ear, although to a different and overall lesser degree than the September 23, 2015 audiogram.

On July 15, 2016, the Commission held an evidentiary hearing. At the hearing, Cochran testified that he had never worked in a factory and had not worked since his retirement as a firefighter in 2013. Cochran testified that his only employment was as a firefighter with the County and, prior to that, as a salesperson for Construction Anchors for one and a half years. At the hearing, Cochran's counsel argued that the age that should be considered for purposes of the deduction set forth in LE § 9-650(b)(3)—the age at the time of the last exposure to industrial noise—should be the claimant's age as of the last date of employment, *i.e.*, the date of retirement. The County's counsel argued that Cochran's 2016 audiogram did not show hearing loss meeting the threshold to be compensable, and, in the alternative, that the age that should be considered for purposes of the deduction should be the claimant's age as of the date of a hearing test. At the conclusion of the hearing, with respect to the deduction set forth in LE § 9-650(b)(3) and the phrase "last exposure to

- 5 -

industrial noise," the Commissioner stated:

> I'm satisfied that the age comes in for every year after the age of 50 from the last exposure, industrial exposure. I am of the belief, unless you have some statutory information to give us of what the intent was when the Act was passed, when they say industrial noise, I think they're putting it into the context of work exposure.
>     The only exposure this man has testified to for work, which would be the industrial, is as a fire fighter for Montgomery County.

On July 21, 2016, the Commission issued a compensation order finding that Cochran had sustained an occupational disease of hearing loss arising out of and in the course of employment as a firefighter with the County and that the first date of disablement was September 23, 2015. The Commission found, based on the first audiogram, that Cochran's disability is the result of an occupational disease. The Commission thus ordered the County to pay Cochran's "causally related medical bills[.]"

The County filed in the circuit court a petition for judicial review and a memorandum in support of the petition, alleging among other things that LE § 9-650(b)(3) mandates that the Commission use the employee's age at the time of a hearing test for the decibel deduction, rather than the employee's age at the time of retirement. On April 27, 2018, the circuit court held a hearing. After hearing argument from the parties, the circuit court affirmed the Commission's decision, stating in pertinent part:

> With respect to the industrial noise piece, I am persuaded that the Commissioner got it right. In other words, the Commissioner was legally correct. The phrase industrial noise means noise related to industry, and . . . it's quite notable that our Workers' Compensation Act and statutes derived from what happened in England in the late 18th and early 19th centuries, and that's when the concept of industry and factories was coming into the nomenclature when England turned from an agrarian society to an industrial society, and began to experience things like industrial accidents . . . .
>     So by virtue of the plain meaning of the phrase industrial noise, it's

the noise that comes from factories.  Now, understanding there's all kinds of factories, and technology evolves, it still has to be a factory of some, quote unquote, factory of some kind, and not somebody's stereo or they went to a Ravens game and people cheered loudly.  I think the Commissioner got it right, and it's not surprising to me that the legislature did not define industrial noise because it has a common and accepted meaning.  They probably would have said to me, well, why would we have to define it?  Everybody knows what it means[.]

On May 2, 2018, the circuit court entered an order affirming the Commission's decision.

The County appealed.

### Andrew Bowen

Bowen was employed as a firefighter by the County for nearly thirty-five years.  In September 2013, when he was 56 years old, Bowen retired.

On August 17, 2016, Bowen filed a claim with the Commission seeking compensation for bilateral hearing loss.  In the claim, Bowen asserted that he developed hearing loss due to exposure to loud noise during many years of service as a firefighter.  Bowen identified the "Date of accident/occupational disease disablement" as "01/24/2005[.]"  On October 13, 2016, when he was 59 years old, Bowen underwent an audiogram, which showed hearing loss in both ears.  Bowen also suffers from tinnitus.[2]

On December 30, 2016, the Commission held a hearing.  At the hearing, Bowen

---

[2]Stedman's Medical Dictionary defines "tinnitus" as:

Perception of a sound in the absence of an environmental acoustic stimulus.  The sound can be a pure tone or noise including (ringing, whistling, hissing, roaring, or booming) in the ears.  Tinnitus is usually associated with a loss of hearing.  The site of origin of the sound percept may be in the central auditory pathways even if the initial lesion is in the end organ of the auditory system.

*Tinnitus*, Stedman's Medical Dictionary (Westlaw database updated Nov. 2014).

testified that he worked as a paid/salaried firefighter for Montgomery County from 1979 until September 2013, and that he worked as a volunteer firefighter for Prince George's County from 1973, as an active volunteer riding fire trucks, until 1998 or 1999, when he went inactive and transitioned to administrative work. At the hearing, the County's counsel raised issues as to apportioning liability between Montgomery and Prince George's Counties, and alleged that the date of disablement occurred in the early 1990s and that Bowen's claim was barred by the statute of limitations. The County's counsel conceded the limitations argument later during the hearing.

On January 19, 2017, the Commission issued a compensation order finding that Bowen had "sustained an occupational disease of binaural hearing loss and tinnitus arising out of and in the course of employment" as a firefighter for the County and that the date of disablement was January 24, 2005. The Commission ordered the County to pay Bowen's "causally related medical expenses" and authorized medical treatment in the form of hearing aids for Bowen. In the compensation order, the Commission stated that Bowen's case would be held for further consideration as to whether Bowen had sustained permanent partial disability and that the case would be reset on request. The County did not request a rehearing or seek judicial review of the Commission's disability decision.

Eight months later, on September 27, 2017, Bowen's counsel filed issues with the Commission concerning the nature and extent of permanent partial disability due to hearing loss and tinnitus. On December 5, 2017, the Commission held a hearing on the nature and extent of Bowen's hearing loss and tinnitus. Bowen testified that the ringing in his ears is

constant and affects everything he does.[3]

The County's counsel argued that "tinnitus is part of hearing loss, and it's compensable under" LE § 9-650, and therefore Bowen's testimony about his tinnitus was "not relevant . . . to rating the occupational deafness, which includes tinnitus and hearing loss, [be]cause tinnitus is a part of hearing loss." The County's counsel specifically acknowledged that a claim of tinnitus falls under LE § 9-505, stating: "[E]ven though tinnitus is . . . included and captured under the test under [LE §] 9-650; under [LE §] 9-505, . . . it's the occupational deafness statute; and under [LE §] 9-627[](d)[(2)](ii)[,] for bilateral hearing loss[,] it is to the ears, and not to the body as a whole." Bowen's counsel argued that tinnitus was not listed under one of the scheduled losses, and thus by statute "becomes other cases . . . and it is not subsumed under the hearing loss."[4] The County's counsel reiterated "that tinnitus is part of hearing loss, and that it is to the ears and not to

---

[3]The record contains two independent medical evaluations of Bowen. In one, from Jonathan Gitter, M.D., of Dr. Jeffrey D. Gaber & Associates, P.A., with a visit date of October 10, 2016, as to tinnitus, Dr. Gitter stated that Bowen "noted problems with his hearing about 15 years ago and most troubling he developed tinnitus about 10 years ago." In Dr. Gitter's assessment, Bowen suffered from a 16% whole person impairment due to hearing loss, with 10% of that total due to tinnitus.

In another independent medical examination, conducted by Mark A. Dettelbach, M.D., of The Feldman E.N.T. Group, P.C., on September 20, 2016, Dr. Dettelbach stated that, with respect to tinnitus, Bowen "noted tinnitus for the first time around six or seven years ago when it became bothersome. His tinnitus ranges in severity from mild-to-moderate." In an addendum dated December 4, 2017, Dr. Dettelbach opined "that the tinnitus is part of the hearing loss, and there would be a rating to the ears associated with it."

[4]In other words, Bowen's counsel argued that tinnitus is not part of one of the scheduled losses for hearing loss under LE § 9-627(d)(2), but rather is an unscheduled or other cases loss under LE § 9-627(k), meaning that the duration of compensation for permanent partial disability would be determined from the percentage by which the industrial use of the body is impaired due to the injury.

the body as a whole[,]" and that since tinnitus is part of hearing loss, "under [LE §] 9-505, it can only be measured in accordance with [LE §] 9-650, and a doctor's rating is not relevant."

As to the deduction issue, the County's counsel argued that, under the statute and case law, "[y]ou . . . use the age at the time of the hearing test, as opposed to the age at the time that you retired from the job that you're claiming nature and extent of hearing loss for." According to the County's counsel, industrial noise "is ubiquitous" and everyone is "exposed to industrial noise as soon as we run a dishwasher, a garbage disposal, a vacuum cleaner, we walk out on the street [and] hear traffic noise, all of which are industrial noise, none of which [are] in the statute." Bowen's counsel responded that Bowen had not been exposed to industrial noise since his retirement, i.e., that the deduction should use the age of retirement, not the age at the time of the hearing test.

On December 15, 2017, the Commission issued an award of compensation, giving Bowen compensation for permanent partial disability for "14.875% loss of use of [] both ears (bilateral hearing loss); and a further permanent partial disability under 'Other Cases' amounting to 2% industrial loss of use of the body as the result of an injury to the tinnitus[.]" The Commission awarded compensation in the amount of $257 per week, beginning January 25, 2005, for a period of 47.1875 weeks, and awarded payment of medical expenses in the form of hearing aids.

On January 12, 2018, the County filed in the circuit court a petition for judicial review. The County disputed the Commission's determination that Bowen sustained a 14.875% loss of use of both ears as well as the determination of permanent partial disability

under "Other Cases" amounting to 2% loss of use of the body due to tinnitus. In an answer to an interrogatory as to the facts relied on for the contention that the Commission's decision was incorrect, the County stated in relevant part: "The injury was to the ear. The hearing test was performed on October 13, 2016. The Claimant's age at the time of the hearing test was 59. Tinnitus is a form of hearing loss. The *AMA Guides* rate tinnitus as an add-on to increase a hearing loss rating." In an answer to another interrogatory, the County stated that the issue on appeal was "nature and extent of the occupational deafness claim and not compensability[.]"

In the circuit court, the parties each filed a motion for summary judgment. On October 12, 2018, the circuit court held a hearing on the cross-motions for summary judgment. After hearing argument from the parties, the circuit court granted Bowen's motion and denied the County's motion, thereby affirming the Commission's decision. As to the calculation of the deduction under LE § 9-650(b)(3), the circuit court stated:

> On the appropriate date to calculate the average hearing loss under Section 9-650, the Court finds that they need look no further than the plain language of the statute. . . .
> The Court finds that based on the statute, the Commission correctly deducted as of the last day that the employee worked for the County, not when he took the test as the County argues. The term industrial noise is given its ordinary meaning and in the context of worker's compensation, it doesn't mean any noise that a person could be exposed to in his or her ordinary life.
> Instead, it means the noise that the person was exposed to on the job. Therefore, the appropriate date was when the claimant retired, not when he took the test years later.

As to tinnitus, the circuit court ruled:

> [As to] whether the Commission erred in considering the tinnitus separately and in finding that [Bowen] had suffered further permanent partial disability under other cases, resulting in a two percent industrial loss of use

of the body as a result, as the exhibit submitted by [Bowen]'s attorney indicates, it was clear that . . . Bowen was filing for both.

The County disputes that because the County's position is that tinnitus is a part of hearing loss. [LE §] 9-627(k)(1) provides that in all cases of permanent partial disability not listed in [subs]ections (a) through (j) of this section, the Commission shall determine a percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury or occupational disease.

The parties dispute whether tinnitus comes under hearing loss and whether it can be rated separately. Tinnitus is not listed in . . . subsections (a) through (j) of the statute and the Commission has apparently never interpreted the statute as including it under hearing loss. Tinnitus is a ringing in the ear which may or may not be associated with hearing loss.

The mere fact that tinnitus relates to the ear and hearing loss relates to the ear does not mean that tinnitus is a part of hearing loss. The statute doesn't refer to ear in general as it may refer to arm in general. The Commission's interpretation therefore is not clearly erroneous, it does not conflict with the plain language of the statute and therefore, the Court does give it deference.

On October 17, 2018, the circuit court entered a written order consistent with its ruling, denying the County's motion for summary judgment and granting Bowen's cross-motion for summary judgment. The order affirmed the Commission's decision. The County appealed.

**Opinion of the Court of Special Appeals**

The Court of Special Appeals consolidated the two appeals. On November 1, 2019, the Court of Special Appeals affirmed the circuit court's judgment in Cochran's case and affirmed in part and reversed in part the circuit court's judgment in Bowen's case. See Cochran, 243 Md. App. at 107, 133, 219 A.3d at 125, 141. As to the issue common to both appeals—whether the Commission erred in determining "that the decibels deducted from the total average hearing loss under LE § 9-650(b)(3) should be calculated by counting the number of years between the date the firefighter turned fifty and the date the firefighter

- 12 -

retired (as opposed to the date the hearing test or audiogram was performed)"—the Court of Special Appeals held "that the Commission did not err in calculating the deduction by counting the number of years between each firefighter's 50th birthday and the dates they retired from service." Cochran, 243 Md. App. at 112, 126, 219 A.3d at 128, 136-37. The Court of Special Appeals disagreed with the County that the phrase "last exposure to industrial noise" in LE § 9-650(b)(3) means the date of a hearing test. See id. at 127, 219 A.3d at 137. The Court of Special Appeals pointed out that LE § 9-505 uses the terms "industrial noise" and "harmful noise," and that the "section does not reference or hint at any form of noise other than noise to which the employee was exposed on the job." Id. at 127-28, 219 A.3d at 137-38 (footnote omitted). The Court of Special Appeals held that the plain and unambiguous language of "LE § 9-650(b)(3) means what it says: the deduction reflects the number of years between the claimant's 50th birthday and his [or her] last exposure to harmful noise at work, even if the audiogram is taken years after that last exposure." Id. at 129, 219 A.3d at 138 (footnote omitted).

As to whether the Commission erred in awarding permanent partial disability benefits to Bowen for tinnitus under LE § 9-627(k) as an unscheduled or other cases loss, the Court of Special Appeals held that the Commission erred, although for a reason different than that argued by the County. See Cochran, 243 Md. App. at 112, 129, 219 A.3d at 128, 138. Rather, the Court of Special Appeals held that compensation for tinnitus must be determined under LE § 9-502 because the plain language of LE §§ 9-505 and 9-650 does not include tinnitus. See id. at 129, 219 A.3d at 139. The Court of Special Appeals concluded that, because "Bowen sought compensation for tinnitus as part of his

- 13 -

occupational deafness claim and did not attempt to establish disablement, the Commission erred in awarding him benefits for tinnitus."[5]  Cochran, 243 Md. App. at 129-30, 219 A.3d at 139 (cleaned up).  The Court of Special Appeals reasoned:

> [N]othing on the face of LE § 9-505 or [LE] § 9-650 suggests that the General Assembly intended workers' compensation for occupational deafness to cover anything other than hearing loss measurable by loss of decibels in four specified frequencies, measured in hertz, that meets the threshold established by the mathematical formula in LE § 9-650.  But we hold nevertheless that the Commission erred in awarding permanent partial disability benefits to [] Bowen for tinnitus under LE § 9-627(k) because [] Bowen made no showing, and the Commission accordingly made no finding, that he had a "disablement," a prerequisite to workers' compensation benefits for an occupational disease under LE § 9-502.

Id. at 132-33, 219 A.3d at 140-41.[6]

**Petition for a Writ of *Certiorari* and Conditional Cross-Petition**

On November 27, 2019, the County petitioned for a writ of *certiorari*, raising the following issue:

> Did the [Court of Special Appeals] err in holding that, when calculating a claimant's hearing loss under LE § 9-650(b)(3), the decibels deducted from the total average hearing loss should be calculated by counting the number of years between the date the claimant turned 50 and the date the claimant

---

[5]In its opinion, in a footnote, the Court of Special Appeals reasoned that it could reach the issue of whether a claim of disablement as to tinnitus must be brought under LE § 9-502 because, according to the Court, the County mentioned the argument as an "alternative" in a footnote in its brief.  Cochran, 243 Md. App. at 130 n.15, 219 A.3d at 139 n.15.

[6]The Court of Special Appeals also addressed an issue specific to Cochran's case concerning whether the Commission erred "in calculating [] Cochran's average hearing loss under LE § 9-650(b)(2) by using the results of his initial, earlier-in-time audiogram that showed more hearing loss than the later-in-time audiogram[.]"  Cochran, 243 Md. App. at 112, 219 A.3d at 128.  On that issue, the Court of Special Appeals held that the Commission did not err in relying on the September 2015 audiogram instead of the May 2016 audiogram in determining Cochran's entitlement to compensation for occupational deafness.  See id. at 121, 219 A.3d at 134.  This issue is not before us.

retired?

On December 10, 2019, Respondents filed an answer to the County's petition and conditional cross-petition, raising the following issue:

> Whether the [Court of Special Appeals] erred by reversing a factual finding of the Commission as to whether [] Bowen suffered a "disablement" given that 1) the Commission's factual finding is "presumed to be correct[]"[;] 2) the issue of whether [Bowen] suffered a disablement was not raised at the Commission hearing; and 3) there was no evidence put on by the County before the circuit court to disturb the Commission's finding.

(Cleaned up). On February 11, 2020, this Court granted the petition and conditional cross-petition. See Cochran, 467 Md. 263, 224 A.3d 601.

## STANDARD OF REVIEW

"In an action for judicial review, this Court reviews the administrative agency's decision, not the decision of the circuit court or the Court of Special Appeals." Elec. Gen. Corp. v. LaBonte, 454 Md. 113, 131, 164 A.3d 157, 168 (2017) (citation omitted).

> [A] court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

W.R. Grace & Co. v. Swedo, 439 Md. 441, 453, 96 A.3d 210, 217 (2014) (cleaned up). As to workers' compensation cases, "the decision of the Commission is presumed to be prima facie correct[.]" LE § 9-745(b)(1). That presumption, however, "does not extend to questions of law, which this Court reviews independently." LaBonte, 454 Md. at 131, 164 A.3d at 168 (cleaned up). Pursuant to LE § 9-745(c), a court must "determine whether the Commission: (1) justly considered all of the facts about the . . . occupational disease . . . ;

- 15 -

(2) exceeded the powers granted to it under this title; or (3) misconstrued the law and facts applicable in the case decided." (Paragraph breaks omitted). "This Court gives some deference to the Commission's interpretation of the Workers' Compensation Act unless its conclusions are based upon an erroneous conclusion of law." LaBonte, 454 Md. at 131, 164 A.3d at 168 (cleaned up); see also Montgomery Cty. v. Deibler, 423 Md. 54, 60, 31 A.3d 191, 194 (2011) (This Court "afford[s] the Commission a degree of deference, as appropriate, in its formal interpretations of the Workers' Compensation Act." (Citation omitted)).

Because this case involves statutory construction of the Workers' Compensation Act, the principles of statutory construction discussed in LaBonte, 454 Md. at 131, 164 A.3d at 168, are relevant:

> The goal of statutory interpretation is to effectuate the General Assembly's intent. If the ordinary and natural meaning of a statute's language makes the General Assembly's intent clear, the Court applies the statute's language. Because the Workers' Compensation Act is a remedial statute, if its language is ambiguous, the Court construes the Act as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Where the Workers' Compensation Act's language is unambiguous, however, the Court may not create an ambiguity to interpret the Act more favorably to injured employees.

(Cleaned up); see also LE § 9-102(a) and (b) ("This title shall be construed to carry out its general purpose" and "[t]he rule that a statute in derogation of the common law is to be strictly construed does not apply to this title.").

# DISCUSSION

## I.

## The Parties' Contentions

The County contends that the Commission erred in calculating the deduction from Cochran's and Bowen's total average hearing loss under LE § 9-650(b)(3) by counting the number of years between the date the firefighter turned 50 years old and the date that each firefighter retired. The County argues that LE § 9-650(b)(3) requires the Commission to use a claimant's age at the time of a hearing test, not the age at retirement, to calculate hearing loss for purposes of the deduction. The County asserts that LE § 9-650(b)(3)'s plain language states that its purpose is to allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age, which means measuring the age of the claimant at the time of a hearing test, "not dat[ing] it back to a remote occupational exposure date."

The County contends that the Court of Special Appeals misinterpreted the word "industrial" as used in LE § 9-650(b)(3) to conclude that industrial noise means occupational noise. The County argues that the term "industrial noise" includes noise to which all people are exposed in daily life, such as "riding the subway system, driving by a construction site, attending a concert, running a garbage disposal, vacuuming the floor, flying in a plane, or the like[.]" The County thus maintains that when hearing loss is measured, to take into account the nonoccupational causes found in the population at any given age, the deduction must be calculated using the date of the hearing test, which factors in the aging process that occurred after retirement.

- 17 -

Cochran and Bowen respond that the Commission correctly calculated the deduction in LE § 9-650(b)(3) by using their ages at the time of retirement. Cochran and Bowen contend that the phrase "last exposure to industrial noise" means the last time that a claimant encounters harmful noise at work, not the age of the claimant on the date of a hearing test. Cochran and Bowen argue that the plain and commonly understood meaning of "industrial noise" is noise related to a workplace. Cochran and Bowen assert that, had the General Assembly intended to refer to noise unrelated to the workplace, it would have used the phrase "last exposure to any noise" or "last exposure to noise" in LE § 9-650(b)(3). (Emphasis omitted).

Cochran and Bowen maintain that the language of LE § 9-505 confirms that the term "industrial noise" as used in LE § 9-650(b)(3) means noise in the workplace. Cochran and Bowen also contend that, contrary to the County's contention, there is no conflict between the opening clause of LE § 9-650(b)(3) and the plain meaning of the phrase "last exposure to industrial noise." According to Cochran and Bowen, by using the phrase "at the time of the last exposure to industrial noise[,]" the General Assembly simply "created a mechanism wherein the age, albeit at the time a claimant was 'last exposed' to the harmful noise of his/her occupation, is taken into consideration." Cochran and Bowen contend that, even if LE § 9-650(b)(3) is ambiguous, the Workers' Compensation Act is to be construed liberally in favor of injured workers and thus any ambiguity should be resolved in their favor.

In a reply brief, the County contends that interpreting LE § 9-650(b)(3) as Bowen and Cochran do would "result[] in an absurdity" because, according to the County, a

firefighter who retires at an older age may not have a compensable claim, whereas a firefighter who retires at a younger age with less exposure to noise may have a compensable claim.

## Statutory Framework and Provisions

In Green v. Carr Lowery Glass Co., Inc., 398 Md. 512, 516-18, 921 A.2d 235, 237-38 (2007), this Court discussed the history and statutory framework of the Workers' Compensation Act related to hearing loss. In particular, we observed that "[w]orkers' compensation encompasses two main categories of compensable events: accidental personal injury and occupational diseases." Id. at 516-17, 921 A.2d at 237 (citations omitted). "[A]n employee's hearing loss may fall into either category, depending on whether the employee experienced a sudden traumatic event or was exposed repeatedly to loud noises." Id. at 517, 921 A.2d at 237 (citation omitted).

As we explained in Green, id. at 517, 921 A.2d at 237-38, as originally enacted in 1914, the Workers' Compensation Act provided compensation only for accidental personal injuries arising in and out of "the course of employment, and an employee was not required to show that his or her disability resulted in a loss of wages or earning capacity." (Citation omitted). As such, "an employee who suffered the total loss of hearing in both ears due to a one-time accident that created a loud blast, for example, would have received compensation." Id. at 517, 921 A.2d at 238 (citation omitted).[7] In 1951, the Workers'

_____

[7]In 1939, the Workers' Compensation Act "was amended to provide compensation for injuries arising from occupational disease. . . . [T]he 1939 law did not permit compensation for occupational disease unless and until the employee was no longer able

- 19 -

Compensation Act was expanded to provide compensation for hearing loss as an occupational disease where the employee showed that he or she was no longer able to work in the occupation that produced the disability. See Green, 398 Md. at 517, 921 A.2d at 238 (citation omitted); see also Yox v. Tru-Rol Co., Inc., 380 Md. 326, 332, 844 A.2d 1151, 1155 (2004).

In 1967, the General Assembly amended the Workers' Compensation Act to create a separate provision specifically addressing occupational disease hearing loss, which "provided that 'occupational deafness shall be compensated according to the terms and conditions of this section' and set forth a testing methodology for determining eligibility for compensation." Green, 398 Md. at 517, 921 A.2d at 238 (citations omitted). In enacting the new provision, the General Assembly's intent "was not only to provide technical criteria for measuring occupational loss of hearing but also to make such loss compensable without regard to inability to work or loss of wages." Id. at 518, 921 A.2d at 238 (cleaned up). The new provision thus "provided that an employee may be eligible for occupational disease compensation due to work-related hearing loss without a showing of disablement, *i.e.*, loss of wages or inability to perform regular work." Id. at 518, 921 A.2d at 238 (citations omitted).

Decades later, in 1991, as part of the Code revision process, the Workers' Compensation Act was repealed and recodified as Title 9 of the Labor and Employment Article of the Annotated Code of Maryland. See id. at 518, 921 A.2d at 238. At that time,

---

to work in the last occupation in which he/she was exposed to the hazards of the disease." Yox v. Tru-Rol Co., Inc., 380 Md. 326, 331, 844 A.2d 1151, 1154 (2004) (citation omitted).

- 20 -

the provisions concerning occupational hearing loss were divided between Subtitle 5, concerning entitlement to and liability for compensation, and Subtitle 6, concerning benefits. See id. at 518, 921 A.2d at 238.

In this case, both Cochran and Bowen alleged hearing loss (and, in Bowen's case, tinnitus) based on repeated exposure to loud noise in the course of their employment as firefighters for the County, *i.e.*, an occupational disease, rather than on a sudden traumatic event. LE 9-101(g) defines "occupational disease" as "a disease contracted by a covered employee: (1) as a result of and in the course of employment; and (2) that causes the covered employee to become temporarily or permanently, partially or totally incapacitated." (Paragraph breaks omitted).

LE § 9-505 specifically governs a claimant's right to compensation for occupational deafness. LE § 9-505(a) states: "Except as otherwise provided, an employer shall provide compensation in accordance with this title to a covered employee for loss of hearing by the covered employee due to industrial noise in the frequencies of 500, 1,000, 2,000, and 3,000 hertz."[8] LE § 9-505(b) provides the caveat, though, that "[a]n employer is not liable for compensation for occupational deafness under subsection (a) of this section unless the covered employee claiming benefits worked for the employer in the employment that

---

[8]In Yox, 380 Md. at 337, 844 A.2d at 1157-58, we explained "disablement" in occupational hearing loss cases as follows: "In place of wage loss or impairment—the objective standard applicable to other occupational diseases—[the Workers' Compensation Act] substitute[s] the specific objective criteria for measuring compensable hearing loss. If a covered employee suffers that degree of hearing loss, he/she is, for purposes of compensation, disabled."

exposed the covered employee to harmful noise for at least 90 days."[9]

Once a claimant establishes the right to compensation for an occupational disease, the claimant is eligible to receive benefits. Subtitle 6 of Title 9 of the Workers' Compensation Act, entitled "Benefits," governs benefits and consists of several Parts. The various Parts concern, among other things, general provisions, temporary partial disability, temporary total disability, permanent partial disability, permanent total disability, and occupational deafness. Here, the Commission found that Cochran sustained an occupational disease of hearing loss and ordered the County to pay causally related medical expenses. Similarly, the Commission found that Bowen sustained an occupational disease of hearing loss and tinnitus and ordered the County to pay causally related medical expenses. Additionally, the Commission ordered the County to pay permanent partial disability benefits to Bowen for his hearing loss and tinnitus.

As to permanent partial disability benefits, Part IV of Subtitle 6, LE §§ 9-625 to 9-633, governs. LE § 9-627 sets forth the duration of compensation for a permanent partial

_____

[9]Generally, LE § 9-502 governs a claimant's right to compensation for a disability caused by occupational disease. LE § 9-502(a) defines "disablement" as "the event of a covered employee becoming partially or totally incapacitated: (1) because of an occupational disease; and (2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease." (Paragraph breaks omitted). See also Miller v. W. Elec. Co., 310 Md. 173, 187, 528 A.2d 486, 493 (1987) ("Actual incapacity from employment (whether total or partial) is the test in occupational disease cases[.]" (Citation omitted)). LE § 9-502(c)(1) and (d) provide that an employer and insurer are liable to a covered employee "for disability of the covered employee resulting from an occupational disease" where, among other things, the occupational disease that caused the disability "is due to the nature of an employment in which hazards of the occupational disease exist" and, "on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee."

disability by "prescrib[ing] a schedule of benefits and the 'weeks' of compensation for specific injuries resulting in permanent partial disability" and provides "that all other cases of permanent partial disability are to be determined from the percentage by which the industrial use of the body is impaired as a result of the injury."  Montgomery Cty. v. Robinson, 435 Md. 62, 65, 76 A.3d 1159, 1161 (2013) (footnote omitted).  To determine the duration of permanent partial disability payments for specific injuries, the Commission must determine the extent of the body part's disability and then calculate the number of weeks for which compensation is to be paid.  For example, LE § 9-627(d) addresses the specific injuries of loss of toes other than the great toe, a hand, an arm, a foot, a leg, an eye, hearing, and a perforated nasal septum.  LE § 9-627(d)(2) states: "Compensation shall be paid for the period listed for: (i) the total loss of hearing of 1 ear, 125 weeks; and (ii) the total loss of hearing of both ears, 250 weeks."  (Paragraph breaks omitted).

For other cases of permanent partial disability where the injury does not fall under LE § 9-627(d) or another subsection for a specific injury, LE § 9-627(k) sets forth the process by which the Commission is to calculate the duration of compensation, which involves the Commission determining the percentage by which the industrial use of the body was impaired, taking into consideration the nature of the physical disability, as well as the age, experience, occupation, and training of the claimant at the time that the occupational disease or accidental injury occurred.  See LE § 9-627(k)(1), (2).  The Commission then determines the number of weeks of compensation to be awarded by apportioning the loss, using 500 weeks as the base point.  See LE § 9-627(k)(3).

As to compensation for occupational deafness, Part VII of Subtitle 6 of the Workers'

Compensation Act—LE §§ 9-649 to 9-652—governs how "[a] covered employee who suffers from occupational deafness shall be paid compensation[.]" LE § 9-649. LE § 9-650 "sets forth the criteria for calculating the percentage of hearing loss[.]" Green, 398 Md. at 518, 921 A.2d at 238. LE § 9-650(a)(1) requires that hearing loss "be measured by audiometric instrumentation" meeting certain specified technical criteria. LE § 9-650(b) sets forth the mathematical formula used to calculate a claimant's average thresholds of hearing in four specific frequencies:

> (1) The percentage of hearing loss for purposes of compensation for occupational deafness shall be determined by calculating the average, in decibels, of the thresholds of hearing for the frequencies of 500, 1,000, 2,000, and 3,000 hertz in accordance with paragraph (2) of this subsection.
>
> (2) The average of the thresholds in hearing shall be calculated by:
>
> > (i) adding together the lowest measured losses in each of the 4 frequencies; and
>
> > (ii) dividing the total by 4.
>
> (3) To allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age, there shall be deducted from the total average decibel loss determined under paragraphs (1) and (2) of this subsection one-half of a decibel for each year of the covered employee's age over 50 at the time of the last exposure to industrial noise.

Thus, to calculate the total average decibel loss in an ear, the Commission would look at the decibel losses in the specified frequencies and divide the total by four. For example:

| Frequency (Hertz) | 500 | 1,000 | 2,000 | 3,000 |
|---|---|---|---|---|
| Decibel Loss | 25 | 30 | 35 | 30 |

The total decibel loss is 120 (25 + 30 + 35 + 30). Dividing that total of 120 by 4 gives an average decibel loss of 30 for that ear. Then, taking into account the deduction of LE § 9-

650(b)(3), the Commission would subtract one-half of a decibel from the average decibel loss (30 in this example) for each year of the covered employee's age over 50 at the time of the last exposure to industrial noise. So, if the covered employee is 57 years old at the time of the last exposure to industrial noise, the Commission would deduct 3.5 decibels (7 years over age 50 x 0.5) from 30, leading to an adjusted average decibel loss of 26.5 for the ear in question.

LE § 9-650(c) establishes the minimum level of hearing loss for a compensable occupational deafness claim and the method to calculate the percentage of compensable hearing loss, stating:

> (1) If the average hearing loss in the 4 frequencies determined under subsection (b) of this section is 25 decibels or less, the covered employee does not have a compensable hearing loss.
>
> (2) If the average hearing loss in the 4 frequencies determined under subsection (b) of this section is 91.7 decibels or more, the covered employee has a 100% compensable hearing loss.
>
> (3) For every decibel that the average hearing loss exceeds 25 decibels, the covered employee shall be allowed 1.5% of the compensable hearing loss, up to a maximum of 100% compensable hearing loss at 91.7 decibels.

LE § 9-650(d) sets forth the formula for calculating the "binaural percentage of hearing loss[,]" *i.e.*, the percentage of hearing loss relating to both ears, providing:

> The binaural percentage of hearing loss shall be determined by:
>
> (1) multiplying the percentage of hearing loss in the better ear by 5;
>
> (2) adding that product to the percentage of hearing loss in the poorer ear; and
>
> (3) dividing that sum by 6.

LE § 9-650(e)(1) precludes the consideration of whether an amplification device, *e.g.*, a hearing aid, can improve the employee's hearing in determining the percentage of hearing loss and contains additional requirements.[10]

LE § 9-651 describes the extent of liability for occupational deafness. LE § 9-651(a) states that, generally,

> an employer is liable for the full extent of the occupational deafness of a covered employee if: (1) the employment of the covered employee by the employer has contributed to any extent to the occupational deafness of the covered employee; and (2) the employer otherwise is liable under this section and [LE] § 9-505[.]

LE § 9-651(b) sets forth a limitation on liability, providing:

> An employer is liable only for the part of the deafness attributable to the employment by the employer if the employer establishes by competent evidence, including the results of a professionally controlled hearing test, the extent of the deafness of the covered employee that existed before exposure to harmful noise in the employment of the employer.

### Green v. Carr Lowery Glass Co., Inc.

In <u>Green</u>, 398 Md. at 514, 921 A.2d at 236, this Court held that a claimant was not

---

[10]LE § 9-650(e) provides:

(1) In determining the percentage of hearing loss under this section, consideration may not be given to whether the use of an amplification device improves the ability of a covered employee to understand speech or enhance behavioral hearing thresholds.

(2)    (i) In determining a workers' compensation claim for noise-related hearing loss, audiologic data shall use both bone conduction and air conduction results.

    (ii) If a conductive loss is present, the bone conduction thresholds for each ear, rather than the air conduction levels, shall be used to calculate a claimant's average hearing loss.

eligible for medical benefits in the form of hearing aids under LE § 9-660 unless he was eligible for compensation under LE §§ 9-505 and 9-650. We briefly reviewed the history and statutory framework of the Workers' Compensation Act as it relates to hearing loss, including setting forth the provisions of LE §§ 9-505, 9-650, and 9-660 (concerning the provision of medical services and treatment). See id. at 516-22, 921 A.2d at 237-40. We concluded that the plain language of LE § 9-505 "establishes minimal requirements for an occupational deafness claim[,]" "establishes certain frequencies where a loss of hearing may, in accordance with Title 9, constitute occupational deafness[,]" and "acknowledges that occupational deafness is an occupational disease, regardless of a person's inability to work or loss of wages." Id. at 524, 921 A.2d at 242 (citation omitted). We observed that LE § 9-505 "sets forth only general requirements for making an occupational deafness claim[,]" and "does not provide specific criteria for determining the extent of [] hearing loss" or how to calculate entitlement to compensation for occupational deafness. Id. at 524, 921 A.2d at 242. Nor does LE § 9-505 expressly state that an employer must "provide medical benefits to covered employees with hearing loss in the named frequencies." Id. at 524, 921 A.2d at 242. In short, the plain language of LE § 9-505 does not "independently establish employer liability for compensation or medical benefits if a covered employee suffers hearing loss in the identified frequencies[,]" and thus we concluded that "[a]n employee must also qualify for compensation and benefits under [LE] § 9-650 and [LE] § 9-660." Id. at 525, 921 A.2d at 242 (emphasis omitted).

As to LE § 9-650, we explained that the statute "provides precise testing procedures for determining the extent of a worker's hearing loss." Id. at 525, 921 A.2d at 242. We

observed that, under LE § 9-650(b)(3), "[t]he threshold of hearing loss that must be met in [LE] § 9-650 is calibrated such that any hearing loss experienced due to aging is deducted from the overall calculation of loss." Id. at 525, 921 A.2d at 242. Pursuant to LE § 9-650(c)(1), "a covered employee does not have a compensable hearing loss if the average hearing loss in the four frequency ranges is 25 decibels or less." Id. at 525, 921 A.2d at 242. We explained that LE § 9-650's criteria "presumably establish a threshold that is lower than whatever level of hearing loss constitutes 'disablement,' because occupational hearing loss was meant to be compensable without regard to 'disablement.'" Id. at 525, 921 A.2d at 243 (citation omitted). Nonetheless, in providing that a claimant must have an average loss of more than 25 decibels in the specified frequencies, the General Assembly set a minimum/base threshold for compensation, i.e., the General Assembly "did not set a threshold such that *any* hearing loss attributed to work is compensated[.]" Id. at 525-26, 921 A.2d at 243 (emphasis in original).

We concluded that LE §§ 9-505 and 9-650 are complementary sections and that a claimant must comply with both to be eligible for benefits. See id. at 526, 921 A.2d at 243. This is so because LE § 9-650 "provides the technical criteria for measuring occupation hearing loss," whereas LE § 9-505 does not contain criteria for calculating hearing loss or accounting for age-related hearing loss because LE § 9-505 "references what is already established in [LE] § 9-650." Id. at 526, 921 A.2d at 243. We determined that, because the claimant had conceded that he was not eligible for compensation under LE § 9-650 and therefore not suffering occupational deafness, the claimant was not eligible for medical benefits under LE § 9-660. See id. at 527, 921 A.2d at 243-44.

**Analysis**

Here, we hold that the Commission did not err in calculating the deduction of decibels from Cochran's and Bowen's total average hearing losses under LE § 9-650(b)(3) by counting the number of years between each firefighter's 50th birthday and the dates that they each retired from employment with the County. We conclude that the plain and ordinary meaning of the term "industrial noise" as used in LE § 9-650(b)(3) is occupational noise or noise encountered in the workplace in the employment of the employer. Thus, the phrase "time of the last exposure to industrial noise" means the date that an employee is last exposed to occupational noise, *i.e.*, the date of the employee's retirement, and not the date of a hearing test measuring hearing loss.

We begin by examining the plain language of LE § 9-650(b)(3). As explained above, to determine whether a claimant has compensable hearing loss, the Commission must "add[] together the lowest measured losses in each of the 4 frequencies[,]" LE § 9-650(b)(2)(i)—"500, 1,000, 2,000, and 3,000 hertz[,]" LE § 9-650(b)(1)—and "divid[e] the total by 4[,]" LE § 9-650(b)(2)(ii). Then, the Commission deducts from that number "one-half of a decibel for each year of the covered employee's age over 50 at the time of the last exposure to industrial noise." LE § 9-650(b)(3). Under the plain language of LE § 9-650(b)(3), the deduction appears fairly straightforward and is calculated by deducting half of a decibel for each year over the age of 50 "at the time of the last exposure to industrial noise." The parties dispute, however, the meaning of the phrase "time of the last exposure to industrial noise."

We must construe the plain meaning of the phrase "last exposure to industrial

noise," and, in particular, what "industrial noise" means. Although neither LE § 9-650 nor any other statute in the Workers' Compensation Act defines "last exposure to industrial noise" or "industrial noise," from our perspective, it is clear that the plain meaning of the term "industrial noise" is occupational noise or noise encountered on the job. Indisputably, what can be gleaned from the plain language of LE § 9-650(b)(3) is that the General Assembly intended the deduction to be calculated by using the date of the "last exposure to industrial noise." The plain meaning of that phrase is that the last exposure to industrial noise is the last date that an employee encounters occupational noise on the job, *i.e.*, the employee's retirement date. On its face, the plain language of the statute suggests nothing else. A reading of the phrase "last exposure to industrial noise" in no way denotes that the language means the date of a hearing test, *i.e.*, the words "exposure to industrial noise" clearly do not mean or even suggest a reference to the date a person takes a diagnostic hearing test. It would strain logic to conclude that "last exposure to industrial noise" somehow means the date of a hearing test when LE § 9-650(b)(3) does not reference or mention the date that a hearing test is performed or otherwise give any indication that the date of the hearing test is relevant to the calculation of the deduction. Nor does the plain language of the statute lead to the conclusion that "industrial noise" means loud noises generally encountered in everyday life, such as vacuuming or driving by a construction site. One of the first tenets of statutory construction is to accord language its ordinary meaning. See LaBonte, 454 Md. at 131, 164 A.3d at 168. Here, the plain language of the statute gives no indication of a meaning other than the plain words—last exposure to industrial noise. Had the General Assembly intended otherwise, it would have used a term

other than "industrial noise."

Under the circumstances, though, we think it helpful to briefly examine the "natural and ordinary meaning" of the term "industrial noise." Bottini v. Dep't of Fin., 450 Md. 177, 195, 147 A.3d 371, 382 (2016) (cleaned up). "To ascertain the natural and ordinary meaning of the term . . . , we look to dictionary definitions as a starting point[,]" as "it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning." Id. at 195, 147 A.3d at 382 (cleaned up). Merriam-Webster defines "industrial," in relevant part, as "of or relating to industry[,]" and "one that is employed in industry" or "a company engaged in industrial production or service[.]" *Industrial*, Merriam-Webster (2020), https://www.merriamwebster.com/dictionary/industrial [https://perma.cc/FQ4F-BY8Q]. In turn, "industry" means, in pertinent part, "manufacturing activity as a whole[,]" "a distinct group of productive or profit-making enterprises[,]" "a department or branch of a craft, art, business, or manufacture[,]" and "systematic labor especially for some useful purpose or the creation of something of value[.]" *Industry*, Merriam-Webster (2020), https://www.merriamwebster.com/dictionary/industry [https://perma.cc/4YMN-FDWE]. And, generally speaking, "noise" means sound. See *Noise*, Merriam-Webster (2020), https://www.merriamwebster.com/dictionary/noise [https://perma.cc/PX8V-8JAG]. At bottom, these definitions demonstrate that the plain and ordinary meaning of the term "industrial noise" is noise relating to industry or noise relating to business, manufacturing, or labor, *i.e.*, noise relating to the workplace or occupational noise. Significantly, nothing in LE § 9-650(b)(3) or elsewhere in the Workers' Compensation Act purports to expand the definition of the term "industrial noise" to mean any and all noise, such as noise

encountered in daily life, or to otherwise indicate that "industrial noise" is unrelated to noise encountered in the workplace.[11]

Notably, other parts of the Workers' Compensation Act addressing occupational deafness support the conclusion that the plain and ordinary meaning of "industrial noise" as used in LE § 9-650(b)(3) is occupational noise, *i.e.*, noise encountered on the job. LE § 9-505 defines a claimant's right to compensation for occupational deafness and refers to "industrial noise" and "harmful noise." Specifically, LE § 9-505(a) requires an employer to compensate a covered employee for loss of hearing "due to **industrial noise** in the frequencies of 500, 1,000, 2,000, and 3,000 hertz." (Emphasis added). And, LE § 9-505(b) limits the liability of an employer by requiring that the covered employee have "worked for the employer in the employment that exposed the covered employee to **harmful noise** for at least 90 days." (Emphasis added). LE § 9-505 plainly does not reference or indicate any form of noise other than the noise to which a covered employee would have been exposed to while employed by the employer on the job.

Similar to LE § 9-505(b), LE §§ 9-651 and 9-652 use the term "harmful noise" in

_____

[11]Although Black's Law Dictionary does not define the terms "industrial noise" or "industrial," it defines "industrial disease" by referring to the definition of the term "occupational disease," which means "[a] disease that is contracted as result of exposure to debilitating conditions or substances in the course of employment. [] Employees who suffer from occupational diseases are eligible for workers' compensation." *Industrial Disease*, Black's Law Dictionary (11th ed. 2019); *Occupational Disease*, Black's Law Dictionary. Black's Law Dictionary states that "occupational disease" is "[a]lso termed industrial disease." *Occupational Disease*, Black's Law Dictionary (italics omitted). In other words, under the Black's Law Dictionary definitions, the terms "industrial disease" and "occupational disease" are synonymous in the context of workers' compensation, and similarly, we conclude that the terms "industrial noise" and "occupational noise" are synonymous.

- 32 -

the context of noise which an employee is exposed to on the job. LE § 9-651(b) limits the liability of an employer to "the part of the deafness attributable to the employment by the employer" where the employer establishes "the extent of the deafness of the covered employee that existed before exposure to harmful noise in the employment of the employer." And, LE § 9-652(a) provides that an employer who is liable for the full extent of a covered employee's occupational deafness "may implead any other employer in whose employment the covered employee was exposed to harmful noise." These sections, like LE § 9-505(a) and (b), clearly refer only to noise encountered in the workplace in the employment of the employer. Reading the statutes concerning occupational deafness together supports the conclusion that the plain meaning of the term "industrial noise" as used in LE § 9-650(b)(3) is occupational noise or noise encountered on the job. Plainly, the statute uses the terms "harmful noise" and "industrial noise" to refer to noise a worker is exposed to on the job. Neither term is used to refer to the date a worker takes a hearing test.

We are not persuaded by the contention that the opening clause of LE § 9-650(b)(3)—"[t]o allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age"—mandates a different meaning of the term "industrial noise" or the phrase "last exposure to industrial noise." The plain language of LE § 9-650(b)(3) makes clear that the purpose for the deduction is as it says—"[t]o allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age[,]" *i.e.*, to account for the hearing loss that all individuals experience as part of the aging process from noise unrelated to the workplace

- 33 -

(nonoccupational causes). The remainder of LE § 9-650(b)(3) provides the formula the General Assembly created to implement the deduction—by deducting from the total average decibel loss "one-half of a decibel for each year of the covered employee's age over 50 at the time of the last exposure to industrial noise." That the General Assembly intended to account for hearing loss from nonoccupational causes by creating a formula that requires the Commission to deduct a half of a decibel for every year over the age of 50 that the employee is at the time of the last exposure to industrial noise, *i.e.*, retirement, is evidenced by the plain language of LE § 9-650(b)(3), and the General Assembly was free to select this formula. Nothing within the language of the opening clause of LE § 9-650(b)(3) leads to the conclusion that "last exposure to industrial noise" does not mean the date of retirement, *i.e.*, the date on which an employee is last exposed to occupational noise on the job. This Court should not interpret the language of the statute to be other than its plain meaning because we feel the General Assembly could have done the formula differently.

Construing the plain language of LE § 9-650(b)(3) to mean that the time of the last exposure to industrial noise is the date of the employee's retirement for purposes of the deduction is consistent with the purpose of the Workers' Compensation Act to provide a covered employee compensation for occupational deafness, *i.e.*, hearing loss due to industrial noise experienced by the employee while in the employment of the employer. See LE §§ 9-505, 9-649 to 9-652. Moreover, we are not persuaded to construe LE § 9-650(b)(3) otherwise simply because the County argues that a firefighter who works to an older age before retirement may not have a compensable claim for occupational deafness,

- 34 -

but a firefighter who retires at a younger age may have a compensable claim. The County appears to suggest that the firefighter who retires at a younger age would unfairly receive compensation (because fewer one-half decibels would be deducted) as opposed to the firefighter who remains in the job longer until an older age. The Court of Special Appeals pointed out that the County's position overlooks the circumstance that the firefighter who retires at a younger age would not have been receiving benefits from the time of retirement to the time of the award for occupational deafness. See Cochran, 243 Md. App. at 128, 219 A.3d at 138. Using either the date of retirement or the date of the hearing test as the date of last exposure to industrial noise will result in a deduction of a decibel amount that is necessarily dependent upon when the claimant elects either to retire or have a hearing test. The language of LE § 9-650(b)(3), however, is clear in terms of how the Commission is to calculate the deduction—the deduction reflects the number of years between the time the claimant turns 50 and the date of the claimant's last exposure to industrial noise. Under the plain language of the statute, the date of an audiogram does not factor into the calculation of the deduction.[12]

In our view, just as the Court of Special Appeals determined, the language of LE § 9-650(b)(3) means what it says, and industrial noise plainly means occupational noise or noise encountered in the workplace. To the extent that the County alleges there is an

_____

[12]Also, "[t]his Court gives some deference to the Commission's interpretation of the Workers' Compensation Act unless its conclusions are based upon an erroneous conclusion of law." LaBonte, 454 Md. at 131, 64 A.3d at 168 (cleaned up). Although statutory construction presents a question of law, the Commission's familiarity with workers compensation claims may give its reading of the statute some weight.

inconsistency in LE § 9-650(b)(3) in the opening clause of the subsubsection referring to the average amount of hearing loss from nonoccupational causes, and the formula for the deduction unambiguously requiring the Commission to count the number of years between a claimant's 50th birthday and the time of the last exposure to industrial noise, any such inconsistency or ambiguity in the provision must be construed "as liberally in favor of injured employees as its provisions will permit in order to effectuate [the Workers' Compensation Act's] benevolent purposes." LaBonte, 454 Md. at 131, 164 A.3d at 168 (cleaned up).

Because the plain language of LE 9-650(b)(3) is clear and unambiguous, our analysis could end at this point without resorting to a review of the legislative history. See Wireless One, Inc. v. Mayor and City Council of Balt., 465 Md. 588, 622, 214 A.3d 1152, 1171 (2019) ("When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." (Cleaned up)). Although unnecessary to resort to a review of the legislative history, we observe that our holding concerning the plain language of LE § 9-650(b)(3) is not contradicted by the legislative history, *i.e.*, the legislative history does not compel a contrary interpretation.

In 1967, the General Assembly amended the Workers' Compensation Act to create a new, separate section—Md. Code Ann., Art. 101 (1957, 1964 Repl. Vol.) § 25A—to provide for compensation for occupational deafness. See Green, 398 Md. at 517, 921 A.2d at 235; 1967 Md. Laws 273 (Vol. I, Ch. 155, H.B. 473). The stated purpose of the bill was

to provide workers' "compensation benefits for occupational deafness due to industrial noise, to provide for the manner of determining loss of hearing caused by such employment, to provide for the filing of claims, to allocate liability for such occupational deafness among employers and to relate to occupational deafness and compensation therefor." 1967 Md. Laws 273. The language of the purpose paragraph makes clear that occupational deafness due to industrial noise is hearing loss caused by employment, *i.e.*, that industrial noise is occupational noise or noise encountered in employment.

What is now LE § 9-650(b)(3) was originally codified as Md. Code Ann., Art. 101 (1957, 1964 Repl. Vol.) § 25A(f), which referred to "industrial noise" and provided:

> Before determining the percentage of hearing impairment, in order to allow for the average amount of hearing loss from non-occupational causes found in the population at any given age, there shall be deducted from the total average decibel loss, one half (½) decibel for each year of the employee's age over forty at the time of last exposure to industrial noise.

1967 Md. Laws 274. Md. Code Ann., Art. 101 (1957, 1964 Repl. Vol.) § 25A used the terms "industrial noise" and "harmful noise" in various provisions. See 1967 Md. Laws 273-74.

Decades later, in 1991, as part of the Code revision process, the Workers' Compensation Act was repealed and recodified as Title 9 of the Labor and Employment Article. See Green, 398 Md. at 518, 921 A.2d at 238; 1991 Md. Laws 250 (Vol. I, Ch. 8, H.B. 1), 764 (Vol. II, Ch. 8, H.B. 1). At that time, what was Md. Code Ann., Art. 101 (1957, 1985 Repl. Vol., 1990 Supp.) § 25A(f) became Md. Code Ann., Lab. & Empl. (1991) ("LE (1991)") § 9-650(b)(3) and provided:

> To allow for the average amount of hearing loss from nonoccupational causes

- 37 -

found in the population at any given age, there shall be deducted from the total average decibel loss determined under paragraphs (1) and (2) of this subsection one half of a decibel for each year of the covered employee's age over 40 at the time of the last exposure to industrial noise.

1991 Md. Laws 896. The Revisor's Note states that LE (1991) § 9-650 was "new language derived without substantive change from former Art. 101, § 25A(c) through (f) and (i)." Id. The Revisor's Note also states: "In subsection (b)(3) of this section, the former phrase '[b]efore determining the percentage of hearing impairment', [was] deleted as surplusage." Id. (alteration in original). The term "industrial noise" and the phrase "at the time of the last exposure to industrial noise" remained unchanged in the recodified statute.

Since 1991, what is now LE § 9-650 has been amended only once. In 2000, Md. Code Ann., Lab. & Empl. (1991, 1999 Repl. Vol.) §§ 9-650 and 9-505 were repealed and reenacted with amendments. See 2000 Md. Laws 2274 (Vol. IV, Ch. 417, H.B. 827). At that time, the age referenced in what is now LE § 9-650(b)(3) was raised from 40 to 50 so that the subsection provides that one-half of a decibel is to be deducted "for each year of the covered employee's age over 50 at the time of the last exposure to industrial noise." Id. at 2275 (deleted text omitted). What is now LE § 9-650(b)(3) has remained the same since then.

What can be ascertained from this legislative history is that the General Assembly intended for the Commission to calculate the deduction set forth in LE § 9-650(b)(3) by counting the number of years between a claimant's 50th birthday (originally 40th birthday) and the time of the last exposure to industrial noise. There is no mention or hint of last exposure to industrial noise meaning a hearing test in any version of the statute. As

discussed above, the plain meaning of LE § 9-650(b)(3) is clear and the legislative history does not lead to the conclusion that industrial noise means anything other than occupational noise. Applying the plain language of LE § 9-650(b)(3) to the circumstances of this case, we are convinced that the Commission properly concluded that Cochran's and Bowen's last exposure to industrial noise was the date that each firefighter retired and correctly calculated the deduction set forth in LE § 9-650(b)(3) by counting the number of years between each man's 50th birthday and the date of retirement. Accordingly, we affirm the judgment of the Court of Special Appeals as to this issue concerning both Cochran and Bowen.

## II.

### The Parties' Contentions

Bowen contends that the Court of Special Appeals erred in reversing the Commission's factual finding in its January 2017 order—that he sustained a compensable disablement as a result of tinnitus—because the issue was not raised by the County on appeal and thus was not before the Court. Bowen contends that the Commission's December 2017 order from which the County appealed concerned the extent of permanent partial disability only and not the issue of compensability, *i.e.*, disablement, which was established by the January 2017 order, from which the County did not appeal. Bowen asserts that the Workers' Compensation Act does not require a claimant to relitigate the compensability of the claim in later proceedings on different issues when no issue as to compensability has been raised on appeal. Bowen maintains that the Court of Special Appeals erred both because it lacked jurisdiction to reverse a factual finding by the

Commission on an issue not part of the appeal and because it failed to recognize that the issue of whether there was a disablement was not preserved for appellate review given that the County failed to raise an issue or otherwise challenge the January 2017 order on the point.

The County responds that the Court of Special Appeals did not err in finding that Bowen was required, but failed, to establish disablement due to tinnitus under LE § 9-502 as an ordinary occupational disease. The County acknowledges that it did not appeal the January 2017 order finding a disablement for hearing loss and that its position was that tinnitus was part of hearing loss. The County contends, though, that because the Court of Special Appeals concluded that tinnitus is separate from hearing loss, the Commission was required to make a finding of disablement under LE § 9-502, which it did not. The County maintains that "[t]he issue requiring a showing of disablement for tinnitus was outlined in a lengthy footnote in all appellate briefs and argued at the circuit court."

In a reply brief, Bowen reiterates that the County never appealed or otherwise challenged the Commission's January 2017 order finding disablement due to tinnitus. Bowen argues that the issues of disablement and the extent of permanent partial disability are not the same, as the issues are governed by separate statutes, involve different standards, and, in this case, were decided at separate hearings. Bowen asserts that the Commission does not redetermine compensability each time it holds a hearing on a new issue.

**Law**

LE § 9-726(a) provides that "a party may file with the Commission a written motion

for a rehearing" within fifteen days after the date of the Commission's decision, and, pursuant to LE § 9-726(d)(3), "[t]he Commission may grant a motion for rehearing only on grounds of error of law or newly discovered evidence."

LE § 9-737 authorizes judicial review of the Commission's decisions. LE § 9-737(1) provides, in relevant part, that "[a]n employer, covered employee, . . . or any other interested person aggrieved by a decision of the Commission, . . . may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order by" "filing a petition for judicial review[.]" The Court of Special Appeals has stated that, although "[t]he authority of a reviewing court in compensation cases is broader than in most other administrative appeals[,] that authority does not extend beyond the matters actually presented in the petition [for judicial review]." Mayor and City Council of Balt. v. Bowen, 54 Md. App. 375, 382, 458 A.2d 1242, 1247 (1983) (citations omitted).

LE § 9-736(a) provides the Commission with the authority to readjust the rate of compensation under certain circumstances, providing:

> If aggravation, diminution, or termination of disability takes place or is discovered after the rate of compensation is set or compensation is terminated, the Commission, on the application of any party in interest or on its own motion, may:
>
> (1) readjust for future application the rate of compensation; or
>
> (2) if appropriate, terminate the payments.

And, LE § 9-736(b) provides for continuing jurisdiction of the Commission and authorizes the Commission to modify its findings as follows:

(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the latter of:

> (i) the date of the accident;

> (ii) the date of disablement; or

> (iii) the last compensation payment.

In LaBonte, 454 Md. at 143, 164 A.3d at 175, we observed that, "[u]nder LE § 9-736(b), the Commission is not bound to follow its previous awards and orders; to the contrary, the Commission has the express authority to modify the same." And, we determined that LE § 9-736(b) "unequivocally support[ed] our holding" in that case "that, where the Commission has determined an employee's permanent partial disability and apportioned between an accidental personal injury and a subsequent intervening injury, if the employee's condition worsens, the Commission is not precluded from awarding workers' compensation benefits due to the accidental personal injury." Id. at 143, 164 A.3d at 175.

In LaBonte, id. at 119, 164 A.3d at 161, the claimant, who suffered an accidental personal injury to his back while working as an electrician, filed a claim with the Commission seeking temporary total disability benefits and temporary partial disability benefits, both of which the Commission awarded. The claimant was subsequently injured outside of his workplace in an unrelated matter and filed issues with the Commission

- 42 -

seeking additional temporary total disability benefits, which the Commission denied. See id. at 119, 164 A.3d at 161. The claimant then filed issues with the Commission seeking permanent partial disability benefits, which the Commission awarded, finding that the claimant's disability was partially due to his work-related injury and partially "due to pre-existing and subsequent conditions." Id. at 119-20, 164 A.3d at 161 (cleaned up).

Years later, the claimant filed a petition to reopen, alleging that his back condition had worsened and seeking additional permanent partial disability benefits. See id. at 120, 164 A.3d at 161. The Commission granted the petition to reopen, but denied the request for additional benefits, finding that there "had not been a worsening of [the claimant]'s back condition that was causally related to his" work-related injury "because the Commission's previous Order and Award of Compensation had established a 'subsequent intervening event' that broke the 'causal nexus' between" the work-related injury and the claimant's existing back condition. Id. at 120, 164 A.3d at 161-62. The claimant petitioned for judicial review, and a jury found that the claimant's work-related injury was the cause of the worsening of his back condition. See id. at 120, 164 A.3d at 162.

The Court of Special Appeals affirmed, and this Court affirmed too. See id. at 120, 146, 164 A.3d at 162, 177. We concluded that nothing in the Commission's prior "orders precluded the Commission from determining at a later date how much, if any, worsening of [the claimant]'s back condition was due to his accidental personal injury." Id. at 143, 164 A.3d at 175. We explained that "LE § 9-656(a) empowered the Commission to make such a determination, and LE § 9-736(b)(2) authorized the Commission to modify its previous finding of the proportion of [the claimant]'s back condition that was due to his"

- 43 -

work-related injury.  Id. at 143, 164 A.3d at 175.

In Gang v. Montgomery Cty., 464 Md. 270, 293, 211 A.3d 355, 369 (2019), we held that the Commission had "continuing jurisdiction to retroactively correct the rate of compensation in [the claimant]'s award for permanent partial disability based on an error of law for which there had been application prior to the expiration of the five-year period of limitations."  In that case, the claimant was injured while working as a correctional officer and the Commission awarded him compensation for a permanent partial disability resulting from the workplace injury.  See id. at 272-73, 211 A.3d at 356-57.  Nearly four years later, the claimant filed a request for document correction with the Commission, seeking adjustment of the award and alleging that the rate of compensation had been incorrectly calculated because he qualified as a public safety employee and was therefore entitled to a greater rate of compensation.  See id. at 274-75, 211 A.3d at 358.  The Commission granted the request and issued an amended award, retroactively increasing the claimant's rate of compensation.  See id. at 275, 211 A.3d at 358.  The County (which was the employer) filed a request for a rehearing with the Commission.  See id. at 275, 211 A.3d at 358.  The Commission held a hearing and affirmed the order increasing the rate of compensation.  See id. at 275-76, 211 A.3d at 358.  The County petitioned for judicial review and the trial court affirmed the Commission's decision.  See id. at 276, 211 A.2d at 359.  The Court of Special Appeals reversed the circuit court's judgment, holding that the Commission erred in retroactively modifying the workers' compensation award.  See id. at 276, 211 A.3d at 359.

We disagreed, holding "that the Commission had the authority to reopen [the

claimant]'s award of permanent partial disability compensation and retroactively adjust his rate of compensation because his request for such, which was made within five years from the date of his last compensation, was based on a mistake or error." Id. at 278, 211 A.3d at 360. We stated that, in LaBonte and other cases, this Court had "recognized the wide breadth of the Commission's authority to modify its previous findings and orders." Gang, 464 Md. at 282, 211 A.3d at 362. We explained that case law supported the conclusion that the Commission had "continuing jurisdiction to reopen [the claimant]'s case to correct an error of law as long as the application for the modification was filed within five years, as it was[,]" as well as the conclusion that the Commission has the authority "to correct its own errors of law within the time limitations of [LE §] 9-736(b)." Id. at 285-86, 211 A.3d at 364-65.

**Analysis**

Here, we hold that the Court of Special Appeals erred in reversing the Commission's decision as to Bowen's tinnitus because any issue as to whether Bowen had sustained a compensable disablement due to tinnitus was not before the Court. Case law holding that the Commission has the authority to review prior awards does not mean that an appellate court may insert into an appeal an issue that was not raised or argued before the Commission. The record reveals the following sequence of events, which demonstrates that only the nature and extent of permanent partial disability due to hearing loss and tinnitus were at issue before the Commission, as well as the circuit court and the Court of Special Appeals, and not whether Bowen had sustained a compensable disablement due to tinnitus.

On August 17, 2016, Bowen filed a claim with the Commission seeking compensation for hearing loss, including tinnitus. On December 30, 2016, the Commission held a hearing. At the hearing, the County's counsel raised issues about apportioning liability and the date of disablement, but acknowledged that, whatever the date of disablement, Bowen "had a compensable binaural hearing loss[.]" The County's counsel did not argue that a claim for tinnitus had to be filed as an occupational disease claim, as opposed to as part of an occupational deafness claim. Indeed, the County's counsel agreed that tinnitus was part of the occupational deafness claim.

A few weeks later, on January 19, 2017, the Commission issued a compensation order finding that Bowen had "sustained an occupational disease of binaural hearing loss and tinnitus arising out of and in the course of employment" as a firefighter for the County. In other words, on that date, the Commission determined that Bowen had a compensable disablement in the form of an occupational disease of binaural hearing loss and tinnitus. It is undisputed that the County did not request a rehearing pursuant to LE § 9-726 or seek judicial review of the Commission's decision pursuant to LE 9-737, *i.e.*, the County did not dispute the Commission's determination that Bowen had the occupational disease of tinnitus and had a compensable disablement as a result. Indeed, in a reply brief filed in this Court, the County concedes that it "did not appeal the January 19, 2017 Order finding a disablement for hearing loss because the County's position was that tinnitus was part of hearing loss."

Later, on September 27, 2017, Bowen's counsel filed issues with the Commission to determine the nature and extent of permanent partial disability due to hearing loss and

tinnitus.  At that point, by virtue of the January 2017 order, it had already been established—without any objection from, or contention otherwise by, the County—for eight months that Bowen had an occupational disease of binaural hearing loss and tinnitus, *i.e.*, that he had a compensable disablement.  On December 5, 2017, the Commission held a hearing on the nature and extent of Bowen's hearing loss and tinnitus.  At the hearing, the County's counsel stated that "tinnitus is part of hearing loss, and it's compensable under" LE § 9-650, and that occupational deafness "includes tinnitus and hearing loss, [be]cause tinnitus is a part of hearing loss."  The County's counsel also stated that tinnitus is "included and captured under" LE §§ 9-650 and 9-505.  At the hearing, the parties disputed whether tinnitus was compensable as a permanent partial disability as an other cases loss, as Bowen's counsel argued, or whether tinnitus was part of hearing loss and, as such, could be measured only under LE § 9-650, as the County's counsel argued.  Notably, the County's counsel did not dispute the Commission's earlier determination that Bowen suffered from a compensable disablement in the form of tinnitus or otherwise argue that a claim for tinnitus was required to be brought under LE § 9-502 rather than under LE § 9-505.  In fact, the County's counsel affirmatively stated that tinnitus is part of hearing loss and falls under the occupational deafness statutes, LE §§ 9-505 and 9-650.

Ten days later, on December 15, 2017, the Commission issued an award of compensation, giving Bowen compensation, in pertinent part, for permanent partial disability under other cases amounting to 2% industrial loss of use of the body due to tinnitus.  On January 12, 2018, the County filed a petition for judicial review, stating, in relevant part, that it specifically disputed the Commission's determination that Bowen

sustained permanent partial disability under other cases amounting to 2% industrial loss of use of the body due to tinnitus. The County's petition for judicial review made clear that the County disputed the 2% industrial loss of use of the body due to tinnitus finding, *i.e.*, the extent (or duration) of the permanent partial disability, but not the circumstance that Bowen suffered a compensable disablement in the form of tinnitus. Stated otherwise, the County disputed the nature and extent of the disablement, not that Bowen had a compensable disablement.

The County's position as presented in the petition for judicial review was confirmed in answers to interrogatories. Specifically, in an answer to an interrogatory propounded by Bowen's counsel requesting "a concise statement of facts as to how [it] contend[ed] Bowen]'s disability occurred[,]" the County responded: "Objection. This interrogatory is not relevant to the issue on appeal which is the nature and extent of the occupational deafness claim and not compensability and would call for medical conclusions." At the hearing before the circuit court, the parties disputed whether tinnitus was part of hearing loss and whether it could be rated separately for purposes of determining permanent partial disability under LE § 9-627. To be sure, at the hearing, the County's counsel argued that there had not been

> any contention . . . that [Bowen] had a separate disablement outside of the hearing loss. For there to be a disablement in the hearing loss case, . . . all you need to show is that you meet the threshold under [LE §] 9-650(b)(3). If you are claiming a separate occupational disease outside of the Occupational Deafness Statute, then you would have to prove that there was some sort of disablement. There was a loss of wages, there was an inability to work.

This is a far cry, however, from arguing that tinnitus is compensable only as an

occupational disease under LE § 9-502 upon establishment of a disablement separate from hearing loss, especially in light of the circumstance that the County's position was that tinnitus is part of hearing loss and compensable under LE §§ 9-505 and 9-650. The circuit court affirmed the Commission's decision with respect to tinnitus being a 2% other cases permanent partial disability.

The County appealed, raising three questions as to Bowen:

Did the [circuit] court err in calculating the permanent partial disability as 11.125% binaural hearing loss under the Act?

Did the [circuit] court err in granting partial disability award for tinnitus separately from hearing loss under the Act?

Did the [circuit] court err when it ordered that the tinnitus be categorized as an "Other Cases" injury instead of an injury to the scheduled member (both ears) specifically mentioned in the Act?

Cochran, 243 Md. App. at 111 n.7, 219 A.3d at 128 n.7. On their face, the questions presented by the County did not raise an issue as to whether Bowen had sustained a compensable disablement due to tinnitus, but instead concerned the award of permanent partial disability for tinnitus. Nonetheless, the Court of Special Appeals reversed the Commission's award and concluded that tinnitus was not compensable as part of occupational deafness under LE § 9-505, but instead must be claimed under LE § 9-502 as an occupational disease, meaning that disablement must be established under that statute. See Cochran, 243 Md. App. at 129-30, 219 A.3d at 138-39. Although the Court of Special Appeals stated that it reversed the Commission's decision with respect to tinnitus on a ground not primarily argued by the County and indicated that the County offered an alternative argument in a footnote, see id. at 129, 130 n.15, 219 A.3d at 138, 139 n.15, a

review of the briefs that the County filed reveals that the issue was not argued at all by the County—in a footnote or anywhere else in its brief. Put simply, the Court of Special Appeals erred in determining that the County argued as an alternative position that tinnitus is a compensable disablement under LE § 9-502, and not LE § 9-505.

Repeatedly, in its brief filed in the Court of Special Appeals, in discussing the award of permanent partial disability for tinnitus, the County argued that "tinnitus is a form of hearing loss covered under the occupational deafness statute and nowhere else under the Act." Brief for Appellant Montgomery Cty., Montgomery Cty. v. Bowen, 243 Md. App. 102, 219 A.3d 122 (2019), No. 2930, Sept. Term, 2018, 2019 WL 3383943, at *19 (bolding and some capitalization omitted). Illustrative of the point, in its brief, the County stated: "[N]o authority exists to allow for a separate award of compensation for tinnitus because tinnitus is a form of hearing loss that affects the injured worker's hearing and is the result of hearing loss." Id. at *19-20. The County also stated: "Since tinnitus falls under the occupational deafness portion of the statute, there is no separate occupational disease claim for tinnitus outside of the occupational deafness claim and therefore no separate award for permanent partial disability." Id. at *20. Significantly, the County contended that "[n]ot only is there no support in the case law to treat tinnitus as a separate occupational disease from occupational deafness, the medical literature does not support such separation." Id. at *21. In a passage that encapsulates the County's argument, the County unequivocally maintained that tinnitus is compensated under LE § 9-505, the occupational deafness statute, as opposed to under LE § 9-502, stating: "Here, no ambiguity exists in the plain meaning of the statute. It is clear that hearing loss, which includes tinnitus, is compensated

in accordance with LE § 9-505, the occupational deafness statute, rather than under LE § 9-502, the general occupational disease statute." Id. at *24.

There is no footnote in which the County takes an opposite or "alternative" position. In addressing the award of permanent partial disability, in one footnote in its brief, footnote 8, the County discussed that Bowen did not claim tinnitus as an occupational disease under LE § 9-502 and that, "[i]nstead, the claim was found compensable based on the occupational deafness portion of the statute[.]" Id. at *19 n.8. Although the footnote described the differences between claims brought under LE §§ 9-502 and 9-505, the County did not contend that this was an issue before the Court or that it was making an alternative argument. See id. In another footnote, footnote 12—apparently the one that the Court of Special Appeals referred to—the County made the point that it did not concede that a separate rating is permitted for tinnitus anywhere under the Workers' Compensation Act. See id. at *26 n.12. In footnote 12, the County stated:

> The County does not concede that a separate rating for tinnitus is allowable under the Act as the Act requires hearing loss to be compensated in accordance with the formula set out in LE § 9-650 rather than under the prescriptions outlined in the *Guides*[ *to the Evaluation of Permanent Impairment* (American Medical Association, 4th ed., 1993)]. If LE § 9-650 does not capture tinnitus, tinnitus becomes a non-compensable event.

Id. In this footnote, the County sought to clarify that, if compensable at all, tinnitus should be managed under the Act using the formula set forth in LE § 9-650 as a part of hearing loss. The County made the point that if tinnitus is not included under LE § 9-650, then tinnitus is a non-compensable occurrence. This footnote in no way raises an argument or even a suggestion that tinnitus should be claimed under LE § 9-502 as an occupational

- 51 -

disease and that permanent partial disability for tinnitus should be determined under LE §

9-627(k).

Yet, in a footnote in its opinion, the Court of Special Appeals erroneously reasoned

that the County raised an alternative argument about tinnitus being compensable under LE

§ 9-502 upon establishment of disablement, stating:

> The County makes this argument, but only as an alternative and in a footnote.
> It says that it does not "concede" that tinnitus is compensable outside of
> claims for occupational deafness under LE § 9-505 and LE § 9-650. The
> practical outcome of the County's main position is that tinnitus would likely
> never be compensable because it is not measurable, as occupational deafness
> is. Ultimately, though, the County's argument fails because the plain
> language of the statute does not include tinnitus within occupational
> deafness, as we explain herein.

Cochran, 243 Md. App. at 130 n.15, 219 A.3d at 139 n.15 (emphasis omitted). A fair

reading of the County's brief reveals that the Court of Special Appeals concluded that the

County made an alternative argument that it did not make. Footnote 12 of the County's

brief is couched in the language of the Workers' Compensation Act, but it is clear that the

County's position was that it did not concede that there is a separate rating for tinnitus

within the Act and not an argument that a claim for tinnitus should have been brought under

LE § 9-502.[13]  Reading Footnote 12 in the context of the entirety of the County's brief, it

is clear that the only position that the County took is that "to have a compensable hearing

---

[13]We note that, at oral argument before this Court, Bowen's counsel pointed out
that, at oral argument before the Court of Special Appeals, the County's counsel stated that
the appeal concerned whether tinnitus could be rated separately from hearing loss for
purposes of permanent partial disability, and, if so, whether it was to be rated as a scheduled
loss or other cases loss. In other words, as Bowen's counsel advised this Court, based on
the County's counsel's statements at oral argument before the Court of Special Appeals,
he "had no idea that disablement was on the table."

loss/tinnitus claim, the occupational deafness portion of the statute requires a showing of hearing loss as measured under the prescribed decibels under the Act[,]" 2019 WL 3383943, at *19 n.8 (citation omitted), or as stated in footnote 12, if tinnitus is not compensated under LE § 9-650 (using the prescribed decibels), it would not be compensable under the Act, see 2019 WL 3383943, at *26 n.12 (citation omitted).

Now, after the Court of Special Appeals issued the holding concerning tinnitus, in this Court, the County, among other things, states: "[A]ccepting the Court of Special Appeals'[s] finding that tinnitus is separate from hearing loss, the Commission (as the Court of Special Appeals found) would have had to make a separate finding of disablement for the tinnitus claim under LE § 9-502. The Commission did not do so." The County candidly acknowledges in a reply brief in this Court that, at the December 2016 and December 2017 hearings, "[b]oth the tinnitus and hearing loss were treated by the Commission and the parties as covered under LE § 9-505." And, the County does not claim to have sought review of or appealed the January 2017 finding of tinnitus as a compensable disablement.

Against this backdrop, we have no difficulty in concluding that the Court of Special Appeals erred in reversing the Commission's decision as to tinnitus because the issue of whether Bowen sustained a compensable disablement due to tinnitus was not before the Court of Special Appeals.[14] The County's position throughout the case—through two

---

[14]Because we conclude that the issue was not before the Court of Special Appeals, we do not address the issue that the Court of Special Appeals decided—whether a claim for tinnitus must be raised under LE § 9-502 as an occupational disease for which

- 53 -

hearings before the Commission, in the circuit court, and in the Court of Special Appeals—had been that Bowen had sustained a compensable disablement under LE § 9-505 due to hearing loss and tinnitus. There was no inkling whatsoever in the underlying proceedings that tinnitus should not be compensable as part of an occupational deafness claim under LE § 9-505 or that it was compensable only as an occupational disease under LE § 9-502. Put plainly, the issue was not before the Commission or the circuit court, let alone the Court of Special Appeals. In our view, the Court of Special Appeals erred in concluding that the County raised the issue in the form of an alternative argument in a footnote, and the matter was not an issue that was raised before or decided by the Commission.

disablement must be established or under LE § 9-505 as part of an occupational deafness claim. We also note that, had the Court of Special Appeals reversed and remanded, which it did not, to provide Bowen the opportunity to bring the tinnitus claim under LE § 9-502, Bowen would have been unable to do so unless the Court of Special Appeals also held that the statute of limitations was tolled or did not apply because the statute of limitations had expired at the time that the Court of Special Appeals issued its opinion. This is so because LE § 9-711(a)(1), the general statute of limitations applicable to occupational diseases, provides:

> If a covered employee suffers a disablement . . . as a result of an occupational disease, the covered employee . . . shall file a claim application form with the Commission within 2 years . . . after the date:
>
> (i) of disablement or death; or
>
> (ii) when the covered employee . . . first had actual knowledge that the disablement was caused by the employment.

Similarly, were we to remand the case for Bowen to bring a claim for tinnitus under LE § 9-502, this would likely lead to the unjust result of Bowen being time barred from seeking compensation for tinnitus. We know this to be so because, at oral argument, the County's counsel, in rebuttal, assured this Court that "Bowen could go and file a new claim under [LE §] 9-502. The County would raise whatever defenses would be available including disablement or statute of limitations, etc."

Finally, we are not persuaded that LE § 9-736, LaBonte, or Gang compels a different result or stands for the proposition that the Commission's finding of a compensable disablement, as opposed to an adjustment of a compensation rate or modification of an award, is reviewable at any time. LE § 9-736(a)(1) provides the Commission with the authority to readjust the rate of compensation under certain circumstances. That subsubsection plainly provides no support for the conclusion that a disablement finding may be reversed or reviewed at any time. Similarly, although LE § 9-736(b)(1) provides the Commission with "continuing powers and jurisdiction over each" workers' compensation claim, and LE § 9-736(b)(2) provides that "the Commission may modify any finding or order as the Commission considers justified[,]" the fact of the matter is that the County did not seek modification of the finding that Bowen had sustained a compensable disablement due to tinnitus or otherwise seek modification of the January 2017 order. LE § 9-736(b)(2) does not put the onus on the Commission to review any and all of its past findings and orders, seeking ones that may require modification. Nor does LE § 9-736(b)(3) support the position that a compensable disablement finding is reviewable or modifiable at any time. LE § 9-736(b)(3) concerns modifications to "an award[,]" not to a finding of a compensable disablement. In that vein, the Commission's January 2017 order is a "Compensation Order" whereas the December 2017 order is an "Award of Compensation," and each order satisfies a different purpose under the Act, and an award of compensation is subject to modification under LE § 9-736(b)(3). (Some capitalization omitted).

Neither LaBonte nor Gang holds that any issue whatsoever pertaining to a workers'

- 55 -

compensation claim may be reviewed at any time. In <u>LaBonte</u>, 454 Md. at 143, 164 A.3d at 175, we recognized the Commission's authority under LE § 9-736(b) to modify its previous orders. Our holding in <u>LaBonte</u>, <u>id.</u> at 143, 164 A.3d at 175, however, concerned the Commission's modification of an award of compensation upon a claimant's worsening of condition, which we concluded the Commission was permitted to do. We explained that LE § 9-656(a) empowered the Commission to make a determination at a later date that a claimant's condition worsened and that "LE § 9-736(b)(2) authorized the Commission to modify its previous finding of the proportion of [the claimant]'s back condition that was due to his accidental personal injury." <u>Id.</u> at 143, 164 A.3d at 175. And, in <u>Gang</u>, 464 Md. at 293, 211 A.3d at 369, we held that the Commission had continuing jurisdiction to retroactively correct the rate of compensation in an award for permanent partial disability based on an error where the claimant had sought modification prior to the expiration of the five-year period of limitations. Notably, neither <u>LaBonte</u> nor <u>Gang</u> concerned modification (or flat-out reversal) of the Commission's finding of a compensable disablement, and neither case states, let alone implies, that the Commission's finding of a compensable disablement may be reviewed or appealed at any time, or when the employer has not appealed the issue of compensability in the first instance.

In sum, we conclude that the issue of whether Bowen sustained a compensable disablement due to tinnitus, *i.e.*, whether tinnitus is compensable only under LE § 9-502, was not before the Court of Special Appeals. Thus, the Court of Special Appeals erred in considering the matter and in reversing the Commission's award of permanent partial disability benefits to Bowen for tinnitus. Accordingly, we reverse the judgment of the

- 56 -

Court of Special Appeals as to this issue concerning Bowen.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART AS STATED IN THE OPINION. PETITIONER/CROSS-RESPONDENT TO PAY COSTS.**

Circuit Court for Montgomery County
Case Nos. 423960-V and 442304-V

Argued: September 14, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 69

September Term, 2019

———————————————————————

MONTGOMERY COUNTY, MARYLAND

v.

ANTHONY G. COCHRAN AND ANDREW
BOWEN

———————————————————————

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

———————————————————————

Concurring Opinion by McDonald, J.,
which Getty, J., joins.

———————————————————————

Filed: October 26, 2020

I would reach the same result in this case as the Majority Opinion, but do not join its reasoning on the first issue – the construction of Maryland Code, Labor & Employment Article ("LE"), §9-650(b)(3), in the case of a retired claimant like Mr. Cochran and Mr. Bowen.

The Majority Opinion purports to apply a "plain meaning" analysis of the relevant statute without quite grappling with the complete language of the statute. As this Court once observed:

> A preliminary matter [in a plain meaning analysis] is to identify the statutory or regulatory language to be construed. Consider the well-known phrase "She loves me; she loves me not." If one focuses on the first clause, the plain meaning appears clear – no need for further exploration. Similarly, if one considers only the second clause, the meaning seems equally clear though quite different. But when the sentence is considered as a whole, there is ambiguity and one must know more than the language alone to discern its meaning.

*Building Materials Corp. v. Board of Education*, 428 Md. 572, 585 (2012).

The statutory provision at issue in this case poses a similar quandary. It requires that a claimant's hearing loss be computed by audiometric instrumentation according to certain criteria. LE §9-650(a)-(b). Once that test has been conducted, the results are adjusted as follows:

> *To allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age*, there shall be deducted from the [hearing loss measured by audiometric instrumentation] one-half of a decibel for each year of *the covered employee's age over 50 at the time of last exposure to industrial noise*.

LE §9-650(b)(3) (emphasis added). The initial clause of paragraph (b)(3) appears to require an adjustment of the test results based on the claimant's age to account for "hearing

loss from nonoccupational causes."[1]  Hearing loss from nonoccupational causes does not cease as of the date of retirement and, given that the adjustment is to be made to results of a particular hearing test on a particular date, one would expect the formula to relate to the claimant's age at the time of the test that resulted in the claim.  The phrase "any given age," on its face, does not equate to "retirement date."  Indeed, a treatise on the Maryland Workers' Compensation Act concludes that this provision "makes consideration of the claimant's age mandatory."  Richard P. Gilbert, et al., Maryland Workers' Compensation Handbook at 8-20 & n.6 (4th ed. 2013).  The claimant's age on the date that the test was taken seems most pertinent for the adjustment that is to be made.

While that interpretation seems straightforward – perhaps one might even say "plain" – the final phrase of paragraph (b)(3) muddies the waters.  It specifies that the adjustment is to be made according to a formula based on "each year of the covered employee's age over 50 *at the time of the last exposure to industrial noise*."  There appears no obvious reason that the "time of last exposure to industrial noise" would be the date of the hearing test of a retired claimant.  On the other hand, neither is it obvious that the date of last exposure to industrial noise will equate to a date of retirement, as the Majority Opinion seems to assume.  "[A]ge … at the time of last exposure to industrial noise" might happen to coincide with a date of retirement, but it will not always be the case such that

---

[1] In brief and argument, Respondents attempted to discount this part of the statute by characterizing it as a mere "preamble."  It is not a preamble.  *See* Maryland Department of Legislative Services, Legislative Drafting Manual (2019) 170-71 (Preambles).

the "plain meaning" of the phrase is retirement date.[2]

When confronted with ambiguity in the language of a statute, we generally resort to the legislative history of the statute.[3] As the Majority Opinion notes, the relevant provisions relating to occupational deafness were added to the Workers' Compensation Act in 1967. Chapter 155, Laws of Maryland 1967. That legislation was apparently inspired in part by this Court's decision in *Belschner v. Anchor Post Products, Inc.*, 227 Md. 89 (1961). In *Belschner*, a man who worked as a saw operator filed a worker's compensation claim "for the loss of hearing he sustained as a result of exposure to high level industrial noises." 227 Md. at 90. The Commission denied the occupational disease claim because, despite the fact that Mr. Belschner had suffered a 44% binaural hearing loss, he was still able to perform his job as a saw operator. This Court affirmed that decision on the ground that the existing statute required a showing that the worker was disabled by the occupational disease from performing his job. The Court invited the General Assembly to amend the statute if it felt it was necessary to "liberalize the law." *Id*. at 95.

A few years later, the Governor's Commission to Study the Workmen's Compensation Laws ("Study Commission") made such a proposal. On the recommendation of organizations representing workers' compensation insurers, the Study

---

[2] Before retirement, a worker may well perform different jobs for the same employer, some of which involve exposure to industrial noise and some of which do not.

[3] An excellent summary of the history of the statute appears in *Yox v. Tru-Rol Co., Inc.*, 380 Md. 326 (2004) (Wilner, J.).

Commission included within its 1967 report a proposal that the law be amended to include a separate provision for occupational hearing loss. Apparently referring to the *Belschner* decision, the Study Commission stated:

> At the present time, an employee cannot recover for occupational loss of hearing until he shows a loss of wages, due to court interpretation of the law; and, in many cases, the time elapsed invokes limitations and the employee receives no compensation.

Seventh Report of the Governor's Commission to Study Maryland Workmen's Compensation Laws (February 14, 1967) at 2. A few days after the report was issued, the proposed bill was introduced in the House. House Bill 473 (1967). It promptly passed both houses unanimously within the next month. 1967 House Journal at 288, 1274; 1967 Senate Journal at 1182, 1254, 1329. As a result, occupational hearing loss became compensable without regard to whether, like Mr. Belschner, the employee was still performing his or her job. *See Crawley v. General Motors Corp.*, 70 Md. App. 100, 107, *cert. denied*, 310 Md. 147 (1987).

The 1967 enactment included an adjustment for age-related hearing loss in language virtually identical to that of the current statute.[4] The adjustment for age-related hearing loss appears to be consistent with the interests of the original proponents of the 1967 legislation – organization of workers' compensation insurers – who presumably wished to avoid becoming insurers of disabilities caused by aging rather than the workplace.

---

[4] *See* Chapter 155, Laws of Maryland 1967. That adjustment, originally codified as Maryland Code, Article 101, §25A(f), became paragraph (b)(3) of the current statute as part of a 1991 recodification. The only significant difference from the original version of the statute is that the benchmark age for measuring age-related hearing loss was 40 in the original enactment, instead of 50 as it is in the current statute.

Given that the issue that inspired the occupational hearing loss statute – whether a claimant who was *still working* could be eligible for benefits – it seems quite likely that the General Assembly gave no thought to "retirement date" when it enacted the final phrase of what is now paragraph (b)(3) referring to "age … at the time of last exposure to industrial noise" concerning the adjustment for age-related hearing loss.[5]

A hypothetical example based on the *Belschner* case illustrates the anomaly we face in this case. Assume A and B, aged 52 and 54 respectively, are saw operators who suffer hearing loss as a result of their employment but, like Mr. Belschner, remain on the job. They both take the requisite hearing exam with identical results. Both are currently working, so the date of "last exposure to industrial noise" is the same for both A and B. Thus, under the statute, B's test result is adjusted downward for age-related hearing loss more than A's because B is four years over the age of 50 while A is only two years over the age of 50. That appears to accord with the purpose of the statute – given otherwise identical employees and test results, there is a larger downward adjustment for age-related hearing loss for the older employee.

Assume a third claimant – C. C is 54 years old, but previously retired from the post of saw operator at age 52. C also suffered job-related hearing loss and has now taken the requisite test – with an identical result to those of A and B. If the date inserted into the adjustment formula is the date of C's retirement at age 52, rather than the date of the test

---

[5] There is no reference to retirement, much less retirement age, in the Study Commission's brief report. This is perhaps unsurprising as the benchmark age for age-related hearing loss in the original version of the statute was 40 – well before the usual age of retirement. *See* footnote 4 above.

at age 54, C will receive the same smaller adjustment as the younger A (52-50) rather than the larger adjustment made for B (54-50), who is the same age as C and who is presumably subject to the same degree of age-related hearing loss. Although generous to C, this seems an anomalous result. The date of C's hearing test seems a better benchmark than retirement date for the adjustment formula in C's case, but is hard to read into the language of the statute – *i.e.*, "time of last exposure to industrial noise."

Like C, Mr. Cochran and Mr. Bowen took their hearing tests and made their claims after retirement. How is a court to decide between competing interpretations when the statutory language favors neither interpretation and it appears from the legislative history that the General Assembly did not have retired employees in mind at the time it enacted the provision?

In my view, this question cannot be resolved by purporting to divine the "plain meaning" of a particular phrase. And the legislative history is ultimately indeterminate as to legislative "intent" as to how the hearing loss statute should be applied to a retiree. In such circumstances, we must consider how one interpretation or the other comports with the statute as a whole. In that situation, this Court has observed that "because the [Workers' Compensation] is a remedial statute, to the extent that the plain language of the Act is ambiguous or unclear, it must be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Reger v. Washington Co. Board of Education*, 455 Md. 68, 96 (2017) (citations and internal quotation marks omitted); *see also* LE §9-102 (principles of construction of Workers' Compensation Act). For that reason, I join in the judgment, but not the reasoning, of the Majority Opinion.

Judge Getty has advised that he joins in this opinion.