*United Parcel Service, et al. v. David Strothers*, No. 9, September Term, 2022.  Opinion by Eaves, J.

**LABOR AND EMPLOYMENT — WORKERS' COMPENSATION**

The Court of Appeals held that the phrase "definite proof," as used in § 9-504(a)(1) of the Labor and Employment Article, refers to the quality of evidence required by a workers' compensation claimant's burden of production for an accidental hernia and does not elevate the claimant's burden of persuasion to clear and convincing evidence.


**LABOR AND EMPLOYMENT — WORKERS' COMPENSATION**

The Court of Appeals held that Respondent's submitted medical opinion satisfied his burden to produce definite proof that his hernia was new and that the Workers' Compensation Commission did not misconstrue the law in finding that Respondent met both his burdens of production and persuasion.

Circuit Court for Howard County
Case No. C-13-CV-20-000370
Argued: September 13, 2022

IN THE COURT OF APPEALS
OF MARYLAND

No. 9

September Term, 2022

_____

UNITED PARCEL SERVICE, ET AL.

v.

DAVID STROTHERS

_____

Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,
Raker, Irma S.
　　(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Eaves, J.

_____

Filed: December 1, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

In a case of first impression, we are tasked with determining the proper application of the phrase "definite proof" in § 9-504(a) of the Workers' Compensation Act (the "Act"), Md. Code Ann. (1991, 2016 Repl. Vol., 2021 Supp.),[1] in the Labor and Employment ("L&E") Article. Specifically, does that phrase reference the *quality* of evidence a workers' compensation claimant is required to submit, or does it signify the claimant's burden of proof and elevate that burden from a preponderance of the evidence to clear and convincing evidence?

Respondent, David Strothers, an employee of United Parcel Service ("UPS"), developed in September 2019 and in the course of his employment a hernia. He filed a claim with the Maryland Workers' Compensation Commission (the "Commission"), seeking compensation for that injury. The Commission granted his request, finding that (1) Respondent sustained an accidental injury during employment; (2) Respondent's current hernia was the result of the aforementioned accidental injury; and (3) Respondent, as a result of the hernia, was totally disabled from September 20, 2019, to January 21, 2020, inclusive. Petitioners (UPS and its insurer, Liberty Mutual Insurance) sought judicial review in the Circuit Court for Howard County, which affirmed the Commission. Petitioners appealed to the Court of Special Appeals, which affirmed in a reported opinion. *United Parcel Serv. v. Strothers*, 253 Md. App. 708 (2022).

---

[1] Since oral arguments in this case, the 2022 supplement to the L&E Article has been published, but § 9-504(a) remains unchanged.

We granted certiorari, 478 Md. 511 (2022), for the following three questions, which we slightly have rephrased[2]:

1. Did the Court of Special Appeals err when it held that "definite proof" under L&E § 9-504(a)(1) applies to the quality of evidence presented and not the standard of proof a claimant must meet?

2. Did the Court of Special Appeals err when it found that Respondent met his burden of persuasion when producing medical evidence to a preponderance of the evidence standard, the standard applicable to all other claims submitted before the Commission?

3. Did the Court of Special Appeals err when it held that the phrase "immediate operation is needed," under L&E § 9-504(a)(1)(ii), applies to the recommendation and need for surgery and not the timing of the surgery?

---

[2] The questions originally presented to the Court read as follows:
1. Did the Court of Special Appeals err when, in a case of first impression, it held, contrary to the plain language and legislative history of Md. Code Ann., Lab. & Empl. § 9-504, that "definite proof" applies to the quality of evidence presented, and not the standard of evidence presented; when the same quality of evidence is required in all claims presented before the Workers' Compensation Commission?
2. Did the Court of Special Appeals err when it found that the Respondent/Appellee met his burden of production when producing medical evidence to a preponderance of the evidence standard, a standard by which all other claims submitted before the Workers' Compensation Commission must meet; despite the fact evidence existed that the Respondent's hernia existed before the alleged accidental injury?
3. Did the Court of Special Appeals err when, in a case of first impression, it held, contrary to the plain language and legislative history of Md. Code Ann., Lab. & Empl. § 9-504, that "immediate operation is needed" applies to the recommendation and need for surgery and not the timing of the surgery, finding 59 days to be "immediate"?

2

Because we answer the first two questions in the negative, we decline to address the third.[3]

*See Bryant v. State*, 374 Md. 585, 600 (2003) (noting that the Court may decline to address all questions raised in a petition for certiorari if answering fewer questions can resolve the entire appeal). Our reasons follow.

## I.     BACKGROUND

### A.     *Statement of Facts*

Respondent's history of work-related hernias begins in May 2016 when, as an employee of UPS, he injured himself during employment while attempting to dislodge a jam on a sorter chute.[4] In his September 2016 report, Dr. Joshua B. Macht noted that Respondent suffered a left inguinal hernia and umbilical hernia. According to the report, there were "anatomical changes with scarring and insertion of foreign material to complete the repair[,]" which resulted in pain with loss of function and endurance. Dr. Macht believed that Respondent's hernia causally was related to the May 2016 work injury. Respondent subsequently filed a claim for workers' compensation, and the Commission granted the claim, finding that his hernia qualified as a permanent partial disability.

On September 17, 2019, Respondent sustained another work-related injury while manually relocating a load of pallets from one trailer to another,[5] and he advised his

---

[3] We more thoroughly address below our reasons for declining to answer this question. *See infra* n.11.

[4] Respondent also suffered an unrelated hernia some 20 years prior. Whether that was work related or not is not borne out by the record.

[5] At the Commission hearing, Respondent testified that the pallet jack he was using jammed, requiring him to manually move the pallets.

supervisor of the injury. He then presented to Howard County General Hospital ("HCGH") with right-side abdominal pain and nausea. Respondent underwent a computerized tomography ("CT") scan of his abdomen, which revealed a 3.3-centimeter paraumbilical hernia seen containing fat that *appeared* slightly increased in size when compared to imaging of the May 2016 hernia. It was recommended that Respondent follow up with his primary care physician or a general surgeon within one week. The following day, Respondent filed with the Commission a First Report of Injury or Illness, describing his injury.

HCGH originally scheduled Respondent to undergo surgical repair on September 30 with Dr. James Harris, the surgeon who repaired Respondent's May 2016 hernia. Dr. Alan B. Kravitz eventually performed surgery, however, on November 14, 2019.[6] On January 15, 2020, Dr. Robert W. Macht evaluated Respondent and prepared a written report. He noted that Respondent "had no recurrence of [the May 2016] umbilical hernia at the time of his evaluation in this office, in September of 2016." Dr. Macht opined, to a reasonable degree of medical certainty, that Respondent "developed a new onset of an umbilical hernia at the time of [Respondent's] accident, on September 17, 2019."

**B.** *Procedural History*

The Commission held a hearing on February 12, 2020. The parties' agreement began and ended with the fact that Respondent's September 2019 hernia is unrelated to his

---

[6] At the hearing before the Commission, counsel for Respondent stated that surgery was delayed because Petitioners were required to authorize Respondent's surgery and refused. Respondent, therefore, sought out Dr. Kravitz and scheduled the surgery for November 14, 2019.

May 2016 hernia. Respondent argued that his September 2019 hernia was an entirely new hernia. Petitioners, on the other hand, asserted that there was "absolutely no causal relationship from any medical provider" showing that this hernia was related to Respondent's September 2019 work injury and that the current hernia was aggravated by a preexisting lateral hernia Respondent sustained "some 20 years prior." Their argument went something like this: Because (1) the 20-year-old hernia was indicated as lateral, (2) the May 2016 hernia was a left inguinal and umbilical hernia, and (3) the September 2019 hernia was on the right side but ultimately was labeled just as an umbilical hernia (with no side indicated), then (4) it was more likely that the most recent hernia was an aggravation of the 20-year-old hernia. [7] Respondent testified at the hearing, however, that the 20-year-

[7] We note that Petitioners appear to have shifted course regarding their theory of causation for Respondent's current hernia. In this Court, they seem to adopt the view that Respondent's current hernia *is* an aggravation of the May 2016 hernia. Such a shift is evidenced by their multiple in-brief references to the HCGH records suggesting that his current hernia was enlarged when compared to the imaging for the May 2016 hernia. To be sure, at the Commission hearing, they specifically noted that "regarding the 2016 [hernia], no doctor does causally relate it[.]" Petitioners conceded that Respondent had "Dr. Macht saying [the September 2019 hernia] wasn't a recurrence," but that they instead took issue with the fact that Dr. Macht did not mention "the [20-year-old] umbilical surgery that [Respondent] had had before." In the circuit court, Petitioners advanced the same argument—that Dr. Macht's opinion did not "address the surgery [Respondent] had twenty years prior." Petitioners did, however, state in the circuit court that they "introduce[d] evidence by the diagnosing physician at the time of the alleged hernia that the finding of the umbilical [hernia] was in fact . . . the same hernia [Respondent] had . . . experienced in 2016." This, of course, refers to the HCGH records, but Petitioners conceded that no medical expert linked the 2016 and 2019 hernias and persistently advanced their position that Dr. Macht's opinion failed to consider the 20-year-old hernia.

We will not credit Petitioners' new argument. As we often have stated, "[q]uestions, including Constitutional issues that could have been but were not presented to the administrative agency may not *ordinarily* be raised for the first time in an action for judicial review." *Allmond v. Dep't of Health & Mental Hygiene*, 448 Md. 592, 606 (2016) (emphasis in original) (quoting *Bd. of Physician Quality Assurance v. Levitsky*, 353 Md.

old hernia was in his right-groin area. When asked on what medical evidence Petitioners planned to rely, they confirmed that they had none and were relying on the fact that Respondent had not met his burden to show by definite proof that his (1) September 2019 hernia was new and (2) surgery was "immediate," as contemplated by L&E § 9-504(a)(1)(ii).

In its March 9, 2020, Award of Compensation, the Commission found that (1) Respondent sustained an accidental injury during employment; (2) Respondent's current hernia was the result of the aforementioned accidental injury; and (3) Respondent, as a result of the hernia, was totally disabled from September 20, 2019, to January 21, 2020,

---

188, 208 (1999)). In *Allmond*, we noted that Maryland Rule 8-131(a) gives this Court "discretion to address unpreserved issues[,]" *id.*, but that we normally "do not exercise this discretion, because it is best to allow a 'proper record [to] be made with respect to the challenge' and 'the other parties and the trial judge [to be] given an opportunity to consider and respond to the challenge[,]'" *id.* (alterations in original) (quoting *Chaney v. State*, 397 Md. 460, 468 (2007)). We exercised our discretion to address an unpreserved argument in *Allmond*, noting that "[d]eciding the facial constitutionality of [a statute] against a substantive due process challenge[ ]" was a "rare instance" in which said discretion was warranted "because none of the considerations recited above weigh[ed] against addressing the constitutional issue in th[at] case." *Id.* at 606, 607. There, we noted the uniqueness of the statute being challenged, the lack of a record needed for a facial challenge, and the fact that Petitioner, despite not bringing his facial challenge to the administrative agency, *did* raise it in the circuit court. *Id.* at 607.

Those rare circumstances are absent from this case. There are no constitutional concerns. Petitioners merely are attempting to switch their litigation position regarding causation of Respondent's September 2019 hernia. That is something that easily and clearly could have been argued to the Commission and the circuit court, but Petitioners couched their argument on Dr. Macht's failure to discuss Respondent's 20-year-old surgery. Even if we did consider this argument, Dr. Macht in no uncertain terms stated that Respondent's September 2019 hernia was unrelated to the May 2016 incident and was indeed a *new* hernia. Thus, we likewise would hold that, had this argument been preserved, Dr. Macht's opinion still would have constituted definite proof, which would have satisfied Respondent's burden of persuasion by a preponderance of the evidence.

6

inclusive. Petitioners filed a request for rehearing. In response, Respondent submitted to the Commission a letter with an attached medical opinion from Dr. Kravitz, which stated that Respondent's hernia was "more likely than not caused by September 2019 injury." The Commission denied the request for rehearing.

Petitioners sought judicial review[8] in the Circuit Court for Howard County, which held a hearing on August 27, 2020. The circuit court squarely framed the issue: "[W]hether or not the Commission was correct in its assessment of the hernia as a new hernia"; "if it is a new hernia then UPS foots the bill. If it is an old hernia that's been aggravated then it needs to have an immediate operation before they foot the bill." Petitioners argued that Respondent did not meet his burden under L&E § 9-504(a)(1) to prove his claim by definite proof, alleging that the phrase indicates evidence free of all ambiguity, uncertainty, or obscurity. The circuit court sustained the Commission's ruling, finding that the phrase "definite proof" did not create a higher burden of proof for hernia claims and that the Commission's determination that Respondent suffered a new hernia was not error.

In a reported opinion, the Court of Special Appeals affirmed the circuit court, holding that definite proof refers to the quality of evidence needed to succeed in a hernia claim, Respondent's expert medical opinion qualified as definite proof under the statute, Respondent satisfied the Commission by a preponderance of the evidence that his September 2019 hernia was new, and that his hernia surgery was "immediate." *Strothers*, 253 Md. App. at 722–25.

---

[8] Such review is authorized under L&E § 9-737.

## II. STANDARD OF REVIEW

The Commission's decision is presumed to be prima facie correct, and Petitioners bear the burden of proving otherwise. *See* L&E § 9-745(b). Maryland courts may review a decision of the Commission for only three types of error: whether the Commission (1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia; (2) exceeded the powers granted to it under [the Act]; or (3) misconstrued the law and facts applicable. *Id.* § 9-745(c). Petitioners' appeal concerns only the third ground. In conducting our review, we analyze the Commission's decision and look through the decisions of both the circuit court and Court of Special Appeals. *See Montgomery Cty. v. Cochran*, 471 Md. 186, 208 (2020).

If we review an agency's decision for an alleged error of law, such as here where Petitioners allege an incorrect interpretation of a statute, then we do so under the *de novo* standard. *See id.* (noting that the statutory presumption of correctness "does not extend to questions of law, which this Court reviews independently" (quoting *Elec. Gen. Corp. v. LaBonte*, 454 Md. 113, 131 (2017))).

## III. ANALYSIS

### A. *The Parties' Contentions*

Petitioners' challenge is twofold. They first argue that "definite proof" under L&E § 9-504(a)(1) references Respondent's burden of proof in establishing his claim. In their view, the phrase imposes upon Respondent a burden of clear and convincing evidence, as opposed to merely a preponderance of the evidence. They then assert that, under the clear-and-convincing standard, the Commission erred when it found that Respondent met that

8

burden. Respondent counters that definite proof refers to the *quality* of evidence needed for a hernia claim and that the phrase does nothing to alter the burden of proof for *all* workers' compensation claims: a preponderance of the evidence. When analyzed under this lens, Respondent argues that we cannot say that the Commission misconstrued the law.

To make clear the parties' positions, we think it best to distinguish between various legal concepts. A party's burden of proof is its "duty to prove a disputed assertion or charge[,]" and that term "includes both the *burden of persuasion* and the *burden of production*." *Burden of proof*, Black's Law Dictionary (11th ed. 2019) (emphases in original). When Respondent argues that definite proof relates to the quality of evidence needed, he believes that it refers to the quality of the evidence he must put forth to satisfy his "duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against [him] in a peremptory ruling such as a summary judgment or a directed verdict." *Burden of production*, *id.* When Petitioners argue that definite proof heightens Respondent's burden of proof to the clear-and-convincing standard, they argue that the phrase elevates Respondent's overall "duty to convince the fact-finder to view the facts in a way that favors [Respondent]." *Burden of persuasion*, *id.* Thus, we will refer to the Parties' respective positions using the phrases "burden of production" and "burden of persuasion."

We believe that Respondent's interpretation carries the day. Under L&E § 9-504(a)(1), the phrase "definite proof" refers to the quality of evidence under a claimant's burden of production, rather than creating a heightened clear-and-convincing burden of persuasion. When a claimant files a workers' compensation claim for a hernia, he or she

9

first bears the burden of producing definite proof that the hernia is a new hernia; or, if the hernia was preexisting, that it became so aggravated, incarcerated, or strangulated as a result of the accidental personal injury or strain that an immediate operation was needed. If the claimant fails to meet that burden of production, then the Commission must deny the claim outright. If, on the other hand, the claimant does submit definite proof, satisfying his or her burden of production, then the employer and/or insurer has the option to submit evidence to rebut the claimant's definite proof. At the end of the day, however, the claimant always bears the burden of persuading the Commission by a preponderance of the evidence. Our reasoning follows.

## B.    *Interpreting the Act*

When we engage in statutory interpretation, we must "ascertain and effectuate the real and actual intent of the Legislature[,]" *Westfield Ins. v. Gilliam*, 477 Md. 346, 370 (2022) (quoting *Gardner v. State*, 420 Md. 1, 8 (2011)), and we naturally start with the "text of the statute and the statutory scheme of which it is part[,]" *id.* (citing *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169 (2021)). "One of the first tenets of statutory construction is to accord language its ordinary meaning." *Cochran*, 471 Md. at 221 (citing *LaBonte*, 454 Md. at 131). In *Montgomery County v. Deibler*, we stated that, "[w]hen the meaning of [the Act's] plain language is 'clear and unambiguous,' our interpretative task is at an end." 423 Md. 54, 60 (2011) (quoting *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 359 (2010)).

Only when we determine that the Act's "plain language is ambiguous or unclear, [do] we seek to discern the intent of the legislature from surrounding circumstances, such

10

as legislative history, prior case law, and the purpose upon which the statutory framework was based." *Id.* (quoting *Brietenbach v. N.B. Handy Co.*, 366 Md. 467, 473 (2001)). But in interpreting the Act, we realize that "additional principles of interpretation enter the equation[,]" namely consideration that the Act is a "remedial statute." *Id.* at 61. As such, we construe it "as liberally in favor of the injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Id.* (quoting *Design Kitchen & Baths v. Lagos*, 388 Md. 718, 724 (2005)). Despite those benevolent purposes, we must exercise judicial restraint and avoid "stifl[ing] the plain meaning of the Act . . . so that the injured worker may prevail." *Id.* (quoting *Brietenbach*, 366 Md. at 473).

We acknowledge that, in typical cases of statutory interpretation involving an executive agency, we give a degree of deference to the agency's—here, the Commission's—expertise and interpretation of statutes that it administers, and this especially is true when we are confronted with a truly ambiguous statute. *See Cochran*, 471 Md. at 208. As our analysis bears out, however, § 9-504(a) is not ambiguous. Furthermore, while the Commission is the only entity tasked with administering § 9-504(a), it is not a party to this suit, advocating for any specific interpretation of definite proof. Nor has the Commission advanced below any specific interpretation of definite proof. Thus, administrative deference is a non-issue in this case.

**1. Plain language**

Under the Act, "[e]xcept as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to . . . the covered

11

employee for an accidental personal injury sustained by the covered employee[,]"[9] L&E §

9-501(a)(1), and such compensation is provided "regardless of fault as to a cause of the

accidental personal injury[,]" *id.* § 9-501(b). Hernias are, however, treated differently than

all other accidental personal injuries. Section 9-504(a)—the sole provision at issue in this

case—states in its entirety:

> Except as otherwise provided, an employer shall provide compensation in accordance with this title to a covered employee for a hernia caused by an accidental personal injury or by a strain arising out of and in the course of employment if:
>
> (1) the covered employee provides *definite proof* that satisfies the Commission that:
>
> > (i) the hernia did not exist before the accidental personal injury or strain occurred; or
> >
> > (ii) as a result of the accidental personal injury or strain, a preexisting hernia has become so aggravated, incarcerated, or strangulated that an immediate operation is needed; and
>
> (2) notwithstanding any other provision of this title about notice, the accidental personal injury or strain was reported to the employer within 45 days after its occurrence.

(Emphasis added). The phrase "definite proof" is not defined in the Labor and

Employment Article and, to complicate matters further, is found nowhere else in the entire

---

[9] A covered employee is "an individual listed in Subtitle 2 of this title for whom a person, a governmental unit, or a quasi-public corporation is required by law to provide coverage under this title." L&E § 9-101(f). Section 9-202(a) states that an individual is "presumed to be a covered employee while in the service of an employer under an express or implied contract of apprenticeship or hire." The title applies to, among others, each "corporation that has at least 1 covered employee." *Id.* § 9-201.

As pertinent to this case, L&E § 9-101(b) defines "accidental personal injury" as "an accidental injury that arises out of and in the course of employment[.]"

Maryland Annotated Code—not once. We, thus, recognize that we are confronted with a unique term of art.

We have not had the occasion to interpret the phrase and, therefore, begin with the plain meaning of "definite proof" in L&E § 9-504(a). At the time of enactment, the words "definite" and "proof" meant "[h]aving distinct or certain limits[,]" "[c]lear and unmistakable in meaning; precise in detail; explicit; unequivocal[,]" "[s]erving to define or restrict; limiting; determining[,]" *Definite*, Webster's New International Dictionary of the English Language (2d. 1934) [hereinafter *Webster's 1934*], and "[t]hat degree of cogency, arising from evidence, which convinces the mind of any truth or fact and produces belief," *Proof*, *id.* The General Assembly has not enacted any other modifying or descriptive language to that phrase. Thus, we have no reason to ascribe to those words anything other than their ordinary meaning at the time the phrase was codified. Nevertheless, there is no indication—in L&E § 9-504(a) alone—that conveys whether that phrase is applied to a claimant's burden of production or burden of persuasion.

Petitioners latch onto the definition of "definite" provided by the Court of Special Appeals in its opinion below. *Strothers*, 253 Md. App. at 717 (providing a 2021 definition of "definite"). Petitioners' faith is, however, misplaced. The requirement for definite proof in hernia claims has existed since 1931, and that phrase has remained unchanged to this day. We acknowledge that, even in 1934, "definite" *could* mean unequivocal, but the definition cited above overwhelmingly supports the conclusion that—*circa* 1934—something that is "definite" is "precise in detail[]"; it is meant to "restrict[]" or "limit[]" the noun it modifies. *Definite*, *Webster's 1934*. In this case, "definite" serves to restrict or

13

limit the type of proof needed to show that the September 2019 hernia was indeed a new hernia. Thus, as we see it, definite proof references the evidence's quality at the burden-of-production stage.

Adopting Petitioners' argument and applying their preferred definition of "definite" ("free of all ambiguity, uncertainty or obscurity, unquestionable, decided"), *see Strothers*, 253 Md. App. at 717, would result in an oddity by going above and beyond the clear-and-convincing burden of persuasion for which Petitioners now advocate. To require a claimant to submit evidence that is concrete and beyond any legitimate dispute, i.e., an opinion made with *absolute* medical certainty, is a task just shy of an impossibility and a standard we require in no other setting.

We nevertheless agree with Petitioners' overarching contention—that the requirement of definite proof for hernia claims must mean that those claims somehow differ from every other claim for an accidental injury. *See Wheeling v. Selene Fin. LP*, 473 Md. 356, 384 (2021) ("We will not interpret a statute in a manner so as to render a 'word, clause, sentence, or phrase . . . surplusage, superfluous, meaningless, or nugatory[.]'" (alterations in original) (quoting *Breslin v. Powell*, 421 Md. 266, 287 (2011))). Where we disagree with Petitioners, and where they further press us, is their assertion that *every* workers' compensation claim requires expert medical testimony to establish a causal connection between a sustained work injury and a present disability. They argue that definite proof logically cannot speak to the quality of the evidence, because the quality of medical evidence needed in both hernia and non-hernia claims is the same—evidence to a reasonable degree of medical certainty. Petitioners' argument falls short, as we illustrate.

14

We have stated that an expert medical opinion is required "only 'when the subject of the inference [in front of the factfinder] is so particularly related to some science or profession that it is beyond the ken of the average layman' and is not required 'on matters of which the [factfinder(s)] would be aware by virtue of common knowledge[.]'" *Bean v. Dep't of Health & Mental Hygiene*, 406 Md. 419, 432 (2008) (quoting *CIGNA Prop. & Cas. Cos. v. Zeitler*, 126 Md. App. 444, 463 (1999)). Whether the issue of causation "is deemed a 'complicated medical question' requiring expert medical testimony cannot be reduced to a 'hard and fast rule controlling all cases.'" *Kelly v. Balt. Cty.*, 161 Md. App. 128, 146 (2005) (quoting *Am. Airlines Corp. v. Stokes*, 120 Md. App. 350, 356 (1998)), *aff'd*, 391 Md. 64 (2006). There is no general requirement in the Act that claimants *always* submit an expert medical opinion to prevail on their claim, and we can find no support in our case law countenancing Petitioners' broad assertion to the contrary. Their argument, therefore, has no basis in law and must fail. Petitioners further overlook the simple fact that not all medical opinions are of equal probative value.[10] There are various indicia of reliability that a factfinder can assess to determine the quality of the opinion put forth by the claimant, *see infra* Part III.D, and such an assessment must be done on a case-by-case basis.

---

[10] Because Respondent put forth expert medical evidence in this case, we offer no opinion as to whether the phrase "definite proof" *always* requires a hernia claimant to submit an expert medical opinion. We simply hold that the phrase references the quality of evidence that the claimant must submit as part of his or her burden of production.

## 2. Statutory Purpose

Because the Act "provides remedies not available at common law, the statute is remedial." *Andrews & Lawrence Prof. Servs., LLC v. Mills*, 467 Md. 126, 162 (2020) (quoting *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 424 (2016)). We have said many times that the "purpose of the Act is to protect workers and their families from hardships inflicted by accidental work-related injuries and occupational diseases." *Matter of Collins*, 468 Md. 672, 686 (2020) (citing *Gang v. Montgomery Cty.*, 464 Md. 270, 278 (2019)). And the General Assembly requires that the Act "be construed to carry out its general purpose." L&E § 9-102(a). Thus, we especially are sensitive to the General Assembly's intent.

There currently are more than one million hernia repairs performed each year. *See* 161 Am. Jur. Trials 443 § 1 (2019, Sept. 2022 update). Because anything that causes an increase in abdominal pressure can cause a hernia, *see id.* § 3 (noting obesity, lifting heavy objects, diarrhea or constipation, persistent coughing or sneezing, poor nutrition, smoking, and overexertion as risk factors for developing a hernia), the General Assembly had good reason to require more, i.e., definite proof, of claimants seeking work-related compensation for hernias. *See Bethlehem Steel Co. v. Ziegenfuss*, 187 Md. 283, 288 (1946) (noting that the purpose of originally distinguishing hernia claims from other accidental injures was "to gain greater assurance that hernias compensated for have in fact resulted from accidental strains").

Respondent's proposed construction strikes a harmonious balance between both the statute's remedial purpose and the General Assembly's desire to require more from hernia

16

claimants (based on its concern with compensating hernias that truly arise out of a claimant's employment). To adopt Petitioners' proposed construction, that the phrase "definite proof" elevates a hernia claimant's burden of persuasion from a preponderance of the evidence to clear and convincing evidence, would undermine the Act's remedial purpose.

We further note, however, that the General Assembly distinguished in 1931 hernia claims from all other accidental injury claims, and the requirement for definite proof has existed for as long as the distinction itself. *See* 1931 Md. Laws, ch. 363; *see also Ziegenfuss*, 187 Md. at 286. Since the Labor and Employment Article's recodification, there have been three amendments to what is now § 9-504(a). *See* 2020 Md. Laws, ch. 582; 1992 Md. Laws, ch. 22; 1991 Md. Laws, ch. 21. At no point has the General Assembly altered the statute's language to indicate that definite proof somehow always meant that a claimant had a burden of clear and convincing evidence. Assuming Petitioners are correct, the Commission would have been applying for about 90 years without challenge the incorrect burden of persuasion for hernia claimants. We find such an incongruence unlikely.

For the reasons discussed above, based on the Act's plain language and remedial purpose, we agree with the Court of Special Appeals' interpretation that the phrase "definite proof" applies to the quality of evidence required by Respondent under his burden of production.

17

*C.* ***The "Clear and Convincing" Standard and the General Assembly's Use of That Standard Elsewhere***

Our State recognizes "only three standards of proof: '[t]he lowest standard requires proof by a "preponderance" of the evidence; the highest standard demands proof "beyond a reasonable doubt;" an intermediate standard calls for proof that is "clear and convincing."'" *Urban Site Venture II Ltd. v. Levering Assocs.*, 340 Md. 223, 228 (1995) (alteration in original) (quoting *Wills v. State*, 329 Md. 370, 374 (1993)). Thus, the clear-and-convincing standard is the most demanding burden of persuasion in a civil case. We provide the following definition of clear and convincing to juries: "To be clear and convincing, evidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous and 'convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it." MPJI-CV 1:15.

The General Assembly is knowledgeable in the different burdens of persuasion employed throughout the judicial system and has, when it so desired, placed upon individuals the burden of clear and convincing evidence. Our Annotated Code is *replete* with examples of the General Assembly's ability to impose a higher burden of persuasion when that is its desired goal. *See, e.g.*, Md. Code Ann., Crim. Proc. § 12-312(a) (imposing the clear and convincing standard for forfeiture of ownership interest in property); Md. Code Ann., Elec. Law § 12-204(d) (the same for certain contested election matters); Md. Code Ann., Est. & Trusts § 13-712(b) (the same for a court to determine whether an incapacitated individual would desire to cease life support); Md. Code Ann., Fam. Law § 5-323(b) (the same for a finding of parental unfitness for a nonconsensual grant of

18

guardianship); Md. Code Ann., Health—Gen. § 10-632(e)(2) (the same for involuntary admission to a mental health facility).

Common among these examples of when the General Assembly requires the clear-and-convincing burden of persuasion is that they revolve around serious matters that can have drastic, life-altering consequences: deprivation of property, election outcomes, potentially ending life, disrupting a family, and involuntary hospitalization. We seriously doubt that the General Assembly intended to impose the same, exacting standard for such heavy determinations for workers seeking to be compensated for an on-the-job hernia. *See* 2 McCormick on Evid., § 340 (8th ed. July 2022 update) (noting the various types of cases requiring the clear-and-convincing standard and not including workers' compensation claims). This doubt is amplified when one considers the remedial purpose of the statute, as discussed above. *See supra* Part III.B.2. Thus, that the General Assembly chose not to require in direct and clear terms the clear-and-convincing burden of persuasion—when it knows well how to do so—counsels against a finding that definite proof references anything more than the quality of evidence that a claimant must offer as part of his or her burden of production. Indeed, it would be an anomaly if the General Assembly wanted workers, the remedial Act's intended beneficiaries, "to shoulder one of the highest burdens extant in the law: proof by clear and convincing evidence." *United States v. Kaluna*, 192 F.3d 1188, 1204 (9th Cir. 1999) (Thomas, J., dissenting).

### D. *Definite Proof in this Case*

Having held that definite proof describes the quality of the evidence that a claimant must produce to satisfy his or her burden of production, we now address whether Respondent met that burden. The record supports that he did.

Respondent submitted a January 2020 medical opinion by Dr. Robert Macht. The opinion details Respondent's medical history (his past hernia injuries and surgery). Dr. Macht indicated that he examined Respondent and discussed the September 2019 accident at issue. He specifically stated that Respondent "had no recurrence of his [May 2016] umbilical hernia" at the time of reevaluation in Dr. Macht's office in September 2016, indicating that Dr. Macht was familiar with Respondent and Respondent's medical history. Based upon his review of Respondent's medical records, it was Dr. Macht's opinion, to a reasonable degree of medical certainty, that Respondent "developed a new onset of an umbilical hernia" in September 2019.

We fail to see how this thorough medical opinion does not satisfy the requirement for definite proof. It speaks in terms of a reasonable degree of medical certainty and is of sufficient quality for the Commission to determine that Respondent's hernia "did not exist before the accidental personal injury or strain." L&E § 9-504(a). That is all that was required of Respondent to satisfy his burden of production.[11] Petitioners chose not to put

---

[11] While the Court of Special Appeals likewise held that Respondent submitted definite proof that constituted a preponderance of the evidence, *Strothers*, 253 Md. App. at 723, it continued its analysis of the third issue: the meaning of "immediate" in L&E § 9-504(a)(1)(ii). This was, however, unnecessary. True enough, the phrase "definite proof" applies to all of L&E § 9-504(a)(1)—both (i) and (ii). Nevertheless, section (a)(1) is written in the disjunctive, so Respondent needed to prove that he satisfied the criteria in

into the record any of their own expert medical evidence; instead, they relied on what they believed were shortcomings in Dr. Macht's opinion. *See supra* n.7. Given that Respondent's evidence essentially was uncontroverted,[12] we cannot say that the Commission misconstrued the law when it found that Respondent met both his burdens of production and persuasion.

## IV.    CONCLUSION

To reiterate, we hold that "definite proof," as that phrase is used in L&E § 9-504(a)(1), applies to the quality of evidence that a claimant must submit as part of his or her burden of production under a workers' compensation claim for an accidental hernia. If the claimant fails to produce definite proof, then the Commission must deny the claim. If the claimant produces definite proof, then an employer and/or insurer may put forth any of its own evidence to counter the claimant's. Throughout the entire proceeding, the claimant always bears the burden of persuading the Commission that the entirety of the evidence weighs in his or her favor by a preponderance. We, therefore, disagree with Petitioners

---

either § 9-504(a)(1)(i) or (ii)—not both. *See Plank v. Cherneski*, 469 Md. 548, 620 (2020) ("Maryland courts generally interpret 'or' in the disjunctive sense when they construe statutes." (citing *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 642 (2018))). Respondent satisfied the criteria in section (a)(1)(i). Because we think it prudent to decide this case—like any other—as narrowly as possible while still fully resolving the case presented, there is no need to continue the analysis. We, thus, need not decide today what constitutes "immediate" under L&E § 9-504(a)(1)(ii).

[12] As previously noted, the HCGH medical records indicated, at best, that Respondent's September 2019 hernia "*appeared* slightly increased in size when compared" to the May 2016 imaging. (Emphasis added). That is a far cry from a medical expert opining to a reasonable degree of medical certainty that the September 2019 hernia in fact *is* an aggravation of the May 2016 hernia.

that definite proof imposes upon a claimant a burden of persuasion at the level of clear and convincing.

In this case, Dr. Macht's January 2020 medical opinion satisfied the standard of definite proof. Because Petitioners chose not to submit any of their own medical evidence, the Commission did not misconstrue the law when it found that Respondent met both his burdens of production and persuasion. Thus, we affirm the judgment below.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**